HENRY A. McCLAIN v. JOHN R. MANSON, COMMISSIONER, CORRECTIONAL INSTITUTION, SOMERS

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued December 10, 1980—decision released April 14, 1981

*Richard Emanuel,* assistant public defender, with whom on the brief, were *Jerrold H. Barnett* and *Charles D. Gill,* public defenders, for the appellant (plaintiff).

*C. Robert Satti,* state's attorney, for the appellee (defendant).

ARTHUR H. HEALEY, J.   This is an appeal from the denial and dismissal of a petition for a writ of habeas corpus.   Although the petitioner properly presents four[1] issues on this appeal, our disposition requires that we discuss only two of those issues: (1) whether the court erred in finding certain facts without evidence,[2] and (2) whether there was a "deliberate bypass" of a direct appeal to the court by the petitioner.

On March 21, 1972, Henry A. McClain, the petitioner, was sentenced in docket number 8679 in the Superior Court for New London County to an indeterminate term of imprisonment of not less than three years and not more than five years as the result of his conviction on one count of possession of narcotic drugs.   He thereupon started serving that sentence.

---

[1] The petitioner does not properly present the fifth issue which he argues in his brief, relating to the application of General Statutes § 18-7 to the computation of good time, because he failed to raise it before the trial court.   See *Cain* v. *Moore,* 182 Conn. 470, 472, 438 A.2d 723 (1980).

[2] Because the finding was filed on January 3, 1979, the Practice Book revisions which took effect on July 1, 1979, do not apply to this appeal.   See Practice Book § 3166.

Four months later, on July 25, 1972, following his conviction on a two count information in an unrelated criminal action, he was sentenced by the same court in docket number 8809 to a term of not less than five years nor more than ten years imprisonment on the first count of possession of a narcotic drug with intent to sell, and to a term of not less than two years and not more than five years imprisonment on the second count of possession of a narcotic drug. The court ordered that the sentences imposed in docket number 8809 run concurrently with respect to each other, but consecutively to the sentence imposed on March 21, 1972, in docket number 8679. At that time, and after the court had imposed its sentence, the state's attorney asked the court to clarify the sentence with respect to the maximum and minimum terms. At the state's attorney's suggestion, the court "combined" the sentences in docket numbers 8679 and 8809, and stated that "in effect the minimum sentence would be eight and the maximum sentence be fifteen years."

Ignoring the extraneous statement of the court which indicated an aggregating of the two sentences, the prison administration applied the petitioner's sentences as originally stated, computing his term of imprisonment as two separate sentences, with the sentence of March 21, 1972, to be completed on August 29, 1975, and the July 25, 1972, sentence to commence thereafter. The petitioner advised the prison administration that his sentence was not being properly computed in accordance with the effective sentence of eight to fifteen years. The state's attorney, however, agreed with the prison administration that there were two separate

sentences which could not be combined. The prison administration continued to separate the sentences.

Subsequent to the judgment on July 25, 1972, the petitioner applied for a review of his sentence in docket number 8809 before the Sentence Review Division.[3] After "he was fully aware of the fact that the sentences were being treated as separate sentences he voluntarily withdrew his application for review of the sentence in number 8809 on or about November 20, 1975."

On or about August 4, 1972, the petitioner filed an application for waiver of fees and costs of appeal in docket number 8809. On August 14, 1972, Geurson Silverberg, a public defender, was appointed to review the trial transcript and determine the possible grounds for an appeal. Silverberg was granted several extensions of time in which to appeal.

Shortly after Silverberg was appointed, the petitioner, pro se, filed a document with this court, which was treated as a habeas corpus petition and was assigned Hartford County docket number 178888. In that case, the Superior Court, on August 26, 1974, found that rather than pursuing his right of appeal, the petitioner had insisted on proceeding with that habeas corpus petition, contrary to the advice of counsel. It further found that the petitioner's remedy was by way of appeal from his conviction of July 25, 1972.

The petitioner had also previously filed, pro se, a federal habeas corpus proceeding relating to his conviction in docket number 8809. On October 22,

---

[3] The trial court, *Sidor, J.*, on this habeas corpus action took judicial notice of the pleadings and documents on file in docket number 8809 in the Superior Court for New London County.

1974, the United States District Court for the District of Connecticut (Blumenfeld, J.) found that he still continued to have his right of appeal. The federal court also noted that Silverberg had agreed to file speedily the appeal.

On November 1, 1974, the petitioner filed a motion to have his representation by Silverberg terminated. The court, after a hearing, granted this motion on November 25, 1974. No new counsel was appointed because the petitioner specifically stated that he did not want new counsel.

On December 3, 1974, the petitioner filed in docket number 8809 a motion for extension of time to prepare his appeal, which was granted by the court. Four weeks later, the petitioner filed a "Motion for a Hearing to Prepare Record for Appeal." A hearing was held on March 10, 1975, before the court, *Dannehy, J.*, concerning his claim of improper communication between the trial judge and jurors. Two weeks later the court found that the actions of the trial judge had not prejudiced the petitioner.

On March 13, 1975, Silverberg, although relieved earlier as petitioner's counsel, filed a motion for an extension of time to file the petitioner's appeal, which was granted until April 15, 1975. Three days earlier, the petitioner had filed a "Brief for Defendant-Appellant" and an "Affidavit in Support of Motion to Accept Layman's Appeal As Is and Grant Appeal on the Full Record." This latter motion was denied by this court on March 19, 1975, because of the absence of a finding. See *State* v. *McClain,* 168 Conn. 654, 334 A.2d 246 (1975). The petitioner did not seek any further extensions of time to file his appeal beyond April 15, 1975.

On May 21, 1975, the petitioner filed a petition for a new trial and a motion for an expedited hearing. On June 25, 1975, just before the hearing on the merits of the petition for a new trial, the state's attorney asked the court, *Alexander, J.,* to determine whether the petitioner was aware that his time to appeal his judgment of conviction in docket number 8809 had expired. The petitioner, in response, acknowledged that he had intentionally allowed his appeal time to expire.[4] The court, on August 13, 1975, denied the petition for a new trial.

On August 20, 1975, the petitioner filed an appeal from that decision and, thereafter, this court granted the state's motion to dismiss. See *State* v. *McClain,* 169 Conn. 717, 346 A.2d 113 (1975).[5] On December 24, 1975, the petitioner filed an "Affidavit in Support of a Motion for Belated Appeal and Assignment of Counsel to Prepare Appeal." The state then filed an objection to this motion. Thereafter, the court, *Driscoll, J.,* denied the petitioner's motion for a belated appeal on March 22, 1976. The petitioner did not appeal from this denial.

On or about November 12, 1976, the petitioner instituted the present habeas corpus action claiming that the July 25, 1972, "final judgment-sentence" was illegal and also constituted double jeopardy. A hearing[6] on the petition was held on March 30, 1977, before the court, *Sidor, J.* It was submitted to the court on the basis of the pleadings, exhibits and briefs. In its memorandum of decision filed

---

[4] This finding is attacked by the petitioner, and discussed infra.

[5] The motion to dismiss was granted since it appeared that there had been no compliance with General Statutes § 54-95 (a).

[6] At the hearing of March 30, 1977, the petitioner was present and was represented by counsel, Attorney Charles Gill.

August 16, 1977, the court granted the petitioner relief and ordered a remand to the Superior Court "for the reimposition of a proper sentence."[7]

Following this decision, both the petitioner and the state filed motions which the court, *Sidor, J.*, considered as "petitions for reargument," and it decided that a "clarification and amplification" of its earlier decision was in order. Accordingly, a rehearing was held on October 7, 1977, at which the state contended, as it had in its brief of June 27, 1977, that the petition should be dismissed because the petitioner failed to allege and prove that he did not deliberately bypass the orderly procedure of a direct appeal.[8]

At the October, 1977, hearing, the petitioner's counsel, in addressing the matter of "deliberate bypass of appeal," suggested that since the pleadings did not address that issue, they might be amended and testimony offered. Neither was done.[9] The petitioner, however, did make an oral statement, not under oath, that he had not deliberately bypassed the orderly procedure of a direct appeal.[10]

[7] In pertinent part the court said: "The sentence originally imposed on July 25, 1972 was within the legal limits. It is concluded that the subsequent remarks as to the effective sentence were an improper interpretation of the sentencing statute. The matter is remanded to the Superior Court for the reimposition of the proper sentence."

[8] The issue of deliberate bypass was not raised in the pleadings but was raised for the first time in the state's brief dated June 27, 1977.

[9] At the October 7, 1977, hearing, the petitioner's counsel indicated to the court that he did not think that the petitioner "would object to your Honor considering that particular issue if it is expedient to this case."

[10] Although this was not a sworn statement under oath, the court found that the state believed that it should be considered as testimony.

In its memorandum of decision of October 31, 1977, the court concluded that the petitioner failed to prove that he did not deliberately bypass the orderly process of appeal. It therefore rescinded its earlier order of August 15, 1977, and dismissed his petition for a writ of habeas corpus.[11] Thereafter, the petitioner filed a petition for certification of appeal to this court, which was granted.

The petitioner claims, on appeal, that the trial court found certain facts which were not supported by the evidence. "A finding of a material fact may be attacked as not supported by the evidence. The validity of such a claim is tested by the evidence printed in the appendices to the briefs. . . . Findings of material fact not supported by the evidence or not based upon inferences reasonably drawn from the evidence must be stricken." *Jennings* v. *Reale Construction Co.*, 175 Conn. 16, 18–19, 392 A.2d 962 (1978), citing *Morningside Assn.* v. *Morningside Development, Inc.*, 172 Conn. 60, 63–64, 372 A.2d 141 (1976).

The petitioner attacks the finding of the trial court that at the October, 1977, hearing, the petitioner said that he would include in his brief his claims regarding his failure to appeal, and that the court gave him a full opportunity to include all such claims in his brief with the understanding that he would rest on what he had written. In his brief, the petitioner admits that this finding is "substantially accurate." He contends, however, that it is misleading to the extent that "it implies that the petitioner would rest on his (forthcoming) brief as

---

[11] In its decision, the court first discussed and decided the merits of the petitioner's claim before rescinding its earlier order and dismissing the petition.

far as the bypass issue was concerned." He claims
that the relevant portions of the transcript he has
printed in his appendix "clearly illustrate" that he
wanted to file a pro se brief, in addition to any
arguments/briefs submitted by his counsel, Attor-
ney Charles D. Gill. Upon a review of the evidence,
we have no question that the court clearly indicated
that he could do just that if he wished. Moreover,
in an unattacked finding the court stated that it filed
its second memorandum of decision on October 31,
1977, after the submission of additional briefs "by
the respondent and the petitioner (pro se)." We
therefore refuse to strike this finding.

The petitioner also claims that the court found
without evidence that the petitioner offered "prac-
tically nothing" in support of his statement that he
did not deliberately bypass direct appeal, and that
he did not respond in his briefs of June 27, 1977,
and October 17, 1977, to any of the claims or evi-
dence submitted by the state. The petitioner admits
in his brief that the "bulk" of his memorandum sub-
mitted to the court dealt with the merits of his claim
rather than the issue of deliberate bypass. He
points out, however, that he did assert in two para-
graphs[12] of the memorandum that he did not delib-

---

[12] The two paragraphs are the following:

"In the matter of Docket #8809, on August 14, 1972, Judge
Driscoll, ordered Public Defender Silverberg, to apply for the tran-
script and prepare the appeal. (See copy of docket jacket attached,
marked Exhibit-A.) After a wait of about two years, Petitioner,
contending that an appeal prepared to the best of his ability was
better than no appeal, submitted his brief to the Supreme Court and
received a denial. 36 C.L.J. 40.

Attorney John C. Archambault, was assigned to prepare the appeal
in Docket #8679. And since he was not assigned to #8809, com-
bining the sentences was one of the issues that he refused to brief.
The issue was ignored by the Supreme Court, when Petitioner sub-
mitted it in the form of a letter. There was no bypass." (page 1).

erately bypass a direct appeal. Upon review, we conclude that the trial court's finding is supported by the evidence and based upon inferences reasonably drawn therefrom.

The petitioner also claims that the court erred in reaching certain conclusions. We need not reach his claim as to all of the trial court's conclusions for our disposition. The only conclusion attacked that is necessarily involved in our disposition is that the petitioner failed to prove that he did not deliberately bypass the orderly procedure of a direct appeal.[13] Initially, we must point out that we have said that a habeas petitioner must *allege* as well as prove in the trial court that he did not deliberately bypass the orderly procedure of a direct appeal to this court. See *Cajigas* v. *Warden,* 179 Conn. 78, 81-82, 425 A.2d 571 (1979); *Vena* v. *Warden,* 154 Conn. 363, 366-67, 225 A.2d 802 (1966). There is no allegation in the amended petition to this effect although the trial court apparently considered and decided the matter as if it had been alleged; the proper procedure requires, however, that it be alleged.[14] See *Cajigas* v. *Warden,* supra; *Vena* v. *Warden,* supra.

---

[13] The trial court also concluded that "[t]he respondent has proven by a fair preponderance of the evidence that the petitioner intentionally and voluntarily allowed his rights of direct appeal to lapse and terminate." This conclusion is also attacked by the petitioner. Although this is technically erroneous because the burden of proof on deliberate bypass is on the petitioner, it is harmless error and needs no further discussion.

[14] At the hearing before the trial court, *Sidor, J.,* on October 7, 1977, it is clear: (1) that the petitioner and his counsel were aware that the issue of deliberate bypass was before the court; (2) that they wanted the court to consider that issue; and (3) that the petitioner himself stated that he had not deliberately bypassed an appeal. The petitioner is not claiming any prejudice because the issue was considered by the trial court, although he does disagree with the resolution of that issue.

In *Fay* v. *Noia,* 372 U.S. 391, 439, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), the United States Supreme Court said: "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can be fairly described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing on the defendant's default." *Fay,* in effect, cast its deliberate bypass doctrine in terms of waiver, and adopted as the "controlling standard" the classic definition of waiver enunciated in *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)—"an intentional relinquishment or abandonment of a known right or privilege." See *Fay* v. *Noia,* supra.[15]

---

[15] The scope of the *Fay* holding making federal habeas corpus relief available has been limited in some later cases to a "cause" and "prejudice" standard, which is narrower than the waiver standard. See, e.g., *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Francis* v. *Henderson,* 425 U.S. 536, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976); *Davis* v. *United States,* 411 U.S. 233, 93 S. Ct. 1577, 36 L. Ed. 2d 216 (1973); see also Rosenberg, "Jettisoning *Fay* v. *Noia:* Procedural Defaults by Reasonably Incompetent Counsel," 62 Minn. L. Rev. 341 (1978). In *Sykes,* the United States Supreme Court, observing the need of finality in criminal prosecutions and the need to prevent piece-meal litigation of issues properly before a single forum, held that a state prisoner may be deemed to have waived his rights premised on a claimed trial error absent a showing of "cause" for the failure to pursue the state remedy and "prejudice" resulting from that failure. See *Wainwright* v. *Sykes,* supra, 87–91. However, "[s]ince . . . *Sykes* left intact its holding in *Fay* v. *Noia,* it remains undecided which procedural waivers will be evaluated under *Fay's* 'deliberate bypass'

The determination whether a petitioner has deliberately bypassed the orderly process of an appeal[16] must be made on the facts in each case. *Fay* v. *Noia,* supra, 440; *Blue* v. *Robinson,* 173 Conn. 360, 370, 377 A.2d 1108 (1977); *State* v. *Brown,* 157 Conn. 398, 402, 254 A.2d 570 (1969); *Vena* v. *Warden,* 154 Conn. 363, 366, 225 A.2d 802 (1966). The burden of alleging and proving facts necessary to demonstrate that there was no deliberate bypass of a direct appeal to this court is on

---

standard and which under the narrower 'cause' and 'prejudice' test of *Sykes.*" *U.S. ex rel. Carbone* v. *Manson,* 447 F. Sup. 611, 619 (D. Conn. 1978); see *Rinehart* v. *Brewer,* 561 F.2d 126, 130 n.6 (8th Cir. 1977); *Ennis* v. *LeFevre,* 560 F.2d 1072, 1075 (2d Cir. 1977), cert. denied, 435 U.S. 976, 98 S. Ct. 1625, 56 L. Ed. 2d 70 (1978); *Graham* v. *Maryland,* 454 F. Sup. 643, 647 n.2 (D. Md. 1978). It appears that the Supreme Court "is more apt to find a habeas petitioner bound by a bypass with respect to a strategic or tactical decision of the kind normally committed to counsel, than with respect to decisions of the sort entrusted to the defendant himself." *Frazier* v. *Czarnetsky,* 439 F. Sup. 735 (S.D.N.Y. 1977). Included in this latter category would be decisions whether to plead guilty, to forego the assistance of counsel, or to refrain from an appeal. See id., 737–38 n.4. Thus, despite the subsequent limitations on *Fay,* and because *Sykes* left open the question whether its "cause" and "prejudice" standard would apply in a *Fay* type case where the failure to take an appeal was involved, the ultimate responsibility that is upon the defendant himself to decide whether an appeal is to be taken persuades us to apply the "deliberate bypass" standard of *Fay* to this case. See *Ennis* v. *LeFevre,* supra.

[16] There is, of course, no federal constitutional mandate compelling the state to afford appellate review in criminal matters. See *Griffin* v. *Illinois,* 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 (1956). "The right of appeal is purely statutory and is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." *State* v. *Brown,* 157 Conn. 398, 400, 254 A.2d 570 (1969). Once the right of appeal is given, the operation of the appellate apparatus must comport with the federal constitution in respecting due process and other applicable rights, and the state cannot deny any such rights arbitrarily or capriciously. See *Douglas* v. *California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

the petitioner. *Cajigas* v. *Warden,* supra, 81–82; see *Nash* v. *United States,* 342 F.2d 366, 368 (5th Cir. 1965).

To determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived. Waiver does not have to be express but may consist of acts or conduct from which it may be implied. *Talton* v. *Warden,* 171 Conn. 378, 385–86, 370 A.2d 965 (1976). In reaching the determination on the issue of deliberate bypass, we are mindful that the waiver of a constitutional right is not lightly to be implied and every reasonable presumption against waiver must be indulged. See *Emspak* v. *United States,* 349 U.S. 190, 75 S. Ct. 687, 99 L. Ed. 997 (1955); *Johnson* v. *Zerbst,* supra, 464. This is particularly so here where the right to a direct appeal to this court, which the jurisdiction recognizes as crucial in the scheme of our criminal justice system, is involved.

There can be no question that the petitioner knew he had the right of direct appeal to this court. Thus, he knew of the existence of that right, the exercise of which was ultimately his choice. Counsel was appointed for him to implement that right.

Shortly after his counsel was appointed, the petitioner, pro se, filed in this court what was treated as a habeas petition. The Superior Court denied the petition and found that contrary to his counsel's advice, the petitioner insisted on proceeding with the habeas corpus petition rather than pursuing his right of appeal. The federal court also found, acting on a pro se habeas corpus petition filed by the petitioner, that the petitioner continued to have his right of appeal.

Rather than retaining Attorney Silverberg to pursue his right of appeal, the petitioner requested that his counsel be withdrawn. A criminal defendant, of course, has the constitutional right to represent himself. *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). "[A]lthough he may conduct his own defenses ultimately to his own detriment, his choice must be honored." Id., 834.

After a hearing, the court granted his request and did not appoint new counsel because the petitioner stated he did not want one. Although the petitioner filed several motions in this court, he did not timely file an appeal.[17] On his motion for a new trial, the court from which this appeal is taken found that the petitioner intentionally

---

[17] His claim that he did not deliberately bypass his right of appeal is not aided by his filing, in this court, of his motion to "Accept Layman's Appeal Brief As Is and Grant Appeal on the Full Record," which this court denied because of the absence of a finding. See *State* v. *McClain,* 168 Conn. 654, 334 A.2d 246 (1975). Not only did he not seek any further extensions of time to appeal after that denial, but shortly thereafter he chose to file the petition for new trial in the Superior Court, which was also denied. His statement in his brief to the trial court, *Sidor, J.,* that "after a wait of about two years" after August, 1972, he decided "an appeal prepared to the best of his ability was better than no appeal" also does not support his claim because by the time he filed documents in this court which culminated in the decision in *State* v. *McClain,* supra, the petitioner had pending a Sentence Review Division application, a decision on a federal habeas corpus he had brought pro se, and a decision on a Superior Court habeas corpus he had brought pro se.

On the deliberate bypass issue, the petitioner also contends that the attorney assigned to him in docket number 8679 "refused" to brief the issue of "combining the sentences," and that "[t]he issue was ignored by the Supreme Court, when Petitioner submitted it in the form of a letter." This claim has no merit. This court decided his appeal in docket number 8679 in *State* v. *McClain,* 171 Conn. 293, 370 A.2d 928 (1976), and docket number 8809 was no part of that appeal.

allowed his appeal time to expire.[18]  After the petitioner's appeal from that decision was dismissed, as was his motion for a belated appeal, the petitioner instituted in the trial court the present habeas corpus action, in which he offered "practically nothing" in support of his statement that he did not deliberately bypass direct appeal.

Another factor to be considered in determining the knowledgeability on a deliberate bypass issue is the petitioner's background.  See *Johnson* v. *Zerbst,* supra, 464; see also "Developments in the Law—Federal Habeas Corpus," 83 Harv. L. Rev. 1038, 1107 (1970).  The record indicates that he is a man of middle years, articulate, one whose pro se activities in state and federal courts in this case have been somewhat extensive.  He is not a youthful or a misrepresented criminal defendant, who is less readily to be held responsible for failing to press properly his appeal.

Although the petitioner claims that he did not deliberately bypass his right of appeal, the United States Supreme Court has said that "if a subjective determination not to waive or to abandon a claim were sufficient to preclude a finding of a deliberate bypass of orderly state procedures, constitutionally valid procedural requirements . . . would be utterly meaningless."  *Murch* v. *Mottram,* 409 U.S. 41, 46, 93 S. Ct. 71, 34 L. Ed. 2d 194 (1972).  The record here is hardly a silent one proscribing a finding of

---

[18] The petitioner challenges this finding as being found without evidence.  Upon review of the evidence, we conclude that this finding is a fair inference under the facts of this case.  Even if this specific finding were to be stricken, we conclude that the circumstances taking place both before the hearing on his motion for a new trial and after uphold the challenged conclusion of deliberate bypass reached by the court.

waiver. See *Johnson* v. *Zerbst,* supra. The circumstances fully justify the trial court's conclusion that the petitioner did not sustain his burden of proving that he did not deliberately bypass the orderly procedure of a direct appeal. For these reasons, we are of the opinion that the trial court should have denied the petition without reaching the merits. See *Cajigas* v. *Warden,* 179 Conn. 78, 425 A.2d 571 (1979). As in *Cajigas,* we therefore express no opinion on whether the trial court was correct in its ruling on those issues not decided above, as we need not reach them. We must again point out, as we have "repeatedly and emphatically" stated in our other cases, that habeas corpus cannot, as it has been here, be used as an alternative to a direct appeal. See *Cajigas* v. *Warden,* supra, 81; *Blue* v. *Robinson,* 173 Conn. 360, 369, 377 A.2d 1108 (1977); *Vena* v. *Warden,* 154 Conn. 363, 365, 225 A.2d 802 (1966); *Wojculewicz* v. *Cummings,* 143 Conn. 624, 628, 124 A.2d 886 (1956).

There is no error.

In this opinion the other judges concurred.