JOSEPH S. D'AMICO *v.* JOHN R. MANSON,
COMMISSIONER OF CORRECTION
(11626)

PETERS, HEALEY, SHEA, GRILLO and BIELUCH, Js.

Argued February 8—decision released May 15, 1984

*John R. Williams,* for the appellant (plaintiff).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Michael Dearington,* assistant state's attorney, and *Michael Stern,* law student intern, for the appellee (defendant).

SHEA, J. The plaintiff has appealed from the denial of his habeas corpus petition which sought to vacate his pleas of guilty to felony murder in violation of General Statutes § 53a-54c and assault in the second degree in violation of General Statutes § 53a-60 as well as his convictions of those offenses. In accordance with the terms of a sentencing recommendation agreed upon at the time the pleas were accepted, the court imposed concurrent sentences of imprisonment for not less than twenty years nor more than life on the murder charge and for not less than two and one-half nor more than five years on the assault charge. As the basis for the relief sought the plaintiff alleged (1) that he was men-

tally incompetent both at the time he pleaded guilty and at the time he was sentenced; (2) that the trial court failed to question him sufficiently to insure a knowing, voluntary and intelligent waiver of his right to stand trial; and (3) that his failure to appeal from the convictions resulted from his ignorance and was not a deliberate bypass of that procedure. The habeas court, *O'Neill, J.,* decided each of these claims against the plaintiff. Although we disagree with the finding that the plaintiff knowingly waived his right to appeal, we agree with the resolution of the remainder of the plaintiff's claims. Accordingly, we find no error in the judgment denying the petition.

## I

The habeas court found "no credible evidence that [the plaintiff] did not knowingly, voluntarily and intelligently waive his right to appeal. . . ." This finding implies a deliberate bypass of our established appellate procedure on the part of the plaintiff and would, if not clearly erroneous, preclude his resort to habeas corpus in respect to any claims which could have been raised on appeal, such as the alleged deficiencies in the court's interrogation of him prior to acceptance of the guilty plea. *Turcio* v. *Manson,* 186 Conn. 1, 3, 439 A.2d 437 (1982); *McClain* v. *Manson,* 183 Conn. 418, 433, 439 A.2d 430 (1981); *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979). "[T]he petitioner must allege and prove in the trial court that there has not been a deliberate bypass of the orderly procedure of a direct appeal to this court."[1] *Turcio* v. *Manson,* supra, 3. This principle has been modified, however, to the extent of requiring that the record before us must disclose some reasonable basis for concluding that a convicted per-

---

[1] The petition alleges that the plaintiff "did not deliberately bypass his direct appeal." The state does not contest the sufficiency of this allegation.

son has intelligently, understandingly and voluntarily waived his statutory right to appeal. *Staton* v. *Warden,* 175 Conn. 328, 335, 398 A.2d 1176 (1978).

Such a significant protection of liberty as a right to appeal made available to all persons convicted of crimes, must be viewed as fundamental, although its basis is statutory rather than constitutional. *Coppedge* v. *United States,* 369 U.S. 438, 441, 82 S. Ct. 917, 81 L. Ed. 2d 21 (1962); *Nance* v. *United States,* 422 F.2d 590, 592 (7th Cir. 1970). In the exercise of such a right, invidious discriminations, such as between rich and poor, implicate constitutional guarantees of due process and equal protection of the laws. *Douglas* v. *California,* 372 U.S. 353, 355, 83 S. Ct. 814, 9 L. Ed. 2d 811, reh. denied, 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963); *Griffin* v. *Illinois,* 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 (1956). Since the state has established an appellate forum, "these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi* v. *Yeager,* 384 U.S. 305, 310, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966); see *Blackledge* v. *Perry,* 417 U.S. 21, 25, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *Chaffin* v. *Stynchcombe,* 412 U.S. 17, 24 n.11, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973); *Staton* v. *Warden,* supra, 334.

A waiver of such a fundamental right can be found only where it is clearly established that there has been "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Talton* v. *Warden,* 171 Conn. 378, 384, 370 A.2d 965 (1976). In the original statement of the "deliberate bypass" doctrine,[2] which was formulated as a basis for denial

[2] "If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the

of federal habeas corpus relief, this classic definition of waiver was made the controlling standard. *Fay* v. *Noia,* 372 U.S. 391, 439, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). Despite the later development of more restrictive "cause" and "prejudice" criteria for access to federal habeas corpus relief by a state prisoner; *Engle* v. *Isaac,* 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783, reh. denied, 456 U.S. 1001, 102 S. Ct. 2286, 73 L. Ed. 2d 1296, reh. denied, 457 U.S. 1141, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1982); *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); this court has continued to apply the test of "an intentional relinquishment or abandonment of a known right or privilege" in deciding whether a state habeas corpus petitioner has abandoned his right of appeal. *Turcio* v. *Manson,* supra, 3; *McClain* v. *Manson,* supra, 428 n.15; *Staton* v. *Warden,* supra, 334. We have insisted that the record before us "affirmatively disclose that the plaintiff's decision to waive his right to appeal was voluntarily, knowingly and intelligently made." *Staton* v. *Warden,* supra, 335.

The evidence presented to the habeas court, consisting of the defendant's testimony and the transcripts of the proceedings in the trial court, *O'Sullivan, J.,* when the guilty plea was accepted and sentence was imposed, does not satisfy this standard for an effective waiver of the right of appeal. The plaintiff testified that he first learned he had a right to appeal his convictions upon pleas of guilty within the preceding year as a result of a conversation with another prison inmate. On cross-examination he admitted that he had been arrested and convicted on criminal charges many

deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing on the applicant's default." *Fay* v. *Noia,* 372 U.S. 391, 439, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

times before and was familiar with that process. There was, however, no evidence that the plaintiff was aware of the right to appeal a conviction after a guilty plea. The transcript of the sentencing proceeding in the trial court indicates that he was not informed of his right to take such an appeal. Our rule of practice, then in effect, Practice Book, 1963, § 2356, required notification of the right to appeal a conviction only after a trial and was inapplicable to a conviction resulting from a guilty plea.[3] Ordinarily the inaction of a defendant who has been properly notified of his right to appeal would support a finding of waiver. In previous cases where we have found a deliberate bypass of the appellate process there has been evidence that the defendant was aware of his right to appeal his conviction. *Morin* v. *Manson,* 192 Conn. 576, 581, 472 A.2d 1278 (1984); *McClain* v. *Manson,* supra, 430; *Blue* v. *Robinson,* 173

---

[3] Practice Book, 1963, § 483A (redesignated § 2356, effective October 1, 1976), as amended on June 2, 1975, to be effective on September 15, 1975, was as follows: "Where there has been a conviction after trial, and where there has been an adverse decision upon an application for a writ of habeas corpus brought by or in behalf of one who has been convicted of a crime, it shall be the duty of the clerk of the court, immediately after the pronouncement of sentence or notice of decision on the application for a writ of habeas corpus, to advise the defendant in writing of such rights as he may have to appeal, of the time limitations involved, and of the right of an indigent person who is unable to pay the cost of an appeal to apply for a waiver of fees, costs, and expenses and for the appointment of counsel to prosecute the appeal without expense to him." This provision is substantially similar to our present rule of practice, Practice Book § 945, which became effective for criminal proceedings instituted on or after July 1, 1978. Orland, Connecticut Criminal Practice § 1022.

Prior to the 1975 amendment, § 483A had provided for notification of the right to appeal "[w]hen there has been a conviction after trial *or otherwise.*" (Emphasis added.) The 1975 amendment, which limited the duty of notification to a conviction following a trial, brought our practice into conformity with federal procedure. See Federal Rules of Criminal Procedure § 32 (a) (2). Apparently the reason for excluding convictions resulting from guilty pleas from the notification requirement was to avoid the confusion which had resulted in filing frivolous appeals by defendants who had pleaded guilty. See Advisory Committee Note to 1975 Amendment of F.R. 32 (a) (2); 3 Wright, Federal Practice and Procedure: Criminal 2d § 528 n.11.

Conn. 360, 370, 377 A.2d 1108 (1977). Although the trial court was not bound to credit the testimony of the plaintiff in this case, in the absence of some indication in the record before us that the plaintiff was aware of his right to appeal, there is nothing to support the finding of waiver made by the trial court and it is clearly erroneous. See Practice Book § 3060D; *Montgomery* v. *Hopper,* 488 F.2d 877, 879 (5th Cir. 1973); *Blaylock* v. *Fitzharris,* 455 F.2d 462, 463 (9th Cir. 1972).

## II

The only evidence presented by the plaintiff in support of his claim that he was mentally incompetent at the time he pleaded guilty and at the time of sentence was his own testimony that during the nineteen months of confinement which elapsed between his arrest and conviction he was receiving psychiatric treatment, including injections of some unspecified medication. He described the effect of the medication upon him: "It just spaced me out. I don't know how to explain it. I couldn't read. I couldn't lie down without my nerves jumping up and down, and I was sort of disoriented." He testified that he was not receiving any medication at the time he was sentenced but could not recall when he had received the last injection. There was no testimony of any psychiatrist nor were any records introduced to indicate the nature and extent of the plaintiff's mental problem, or the identity or effect upon him of any medication he was receiving. At the sentencing proceeding his attorney did mention to the trial court that "during a good portion of the pretrial period there were substantial questions about his competency." He said that the plaintiff had been "medicated a good deal of the time and communication between him and me was rather limited." The attorney also remarked that the plaintiff had "a good mind," was fluent in Spanish, and was intent upon using his prison time to best advantage by obtaining some education while he was con-

fined. He declared that his client felt the sentencing recommendation was fair and had asked him to convey to the victims "his remorse over what has happened."

The habeas court concluded that the plaintiff had not sustained his burden of proving that he was mentally incompetent at the time of plea or of sentence. The court relied upon the "clear and intelligent responses" given by the plaintiff to the interrogation which preceded acceptance of his guilty plea. With respect to competency at the sentencing proceeding, the court found no suggestion in the remarks of counsel indicating "that medication was a problem" at that time. Since the trier was not bound to credit the plaintiff's testimony, which lacked any substantial corroboration, we find no error in the conclusion that the plaintiff was not incompetent either when he pleaded or when he was sentenced.

## III

In addition to his claim of mental incompetence, the plaintiff asserts two other grounds for vacating his guilty plea: (1) that he was under the erroneous impression that he was exposed to the death penalty on the charge of murder in violation of General Statutes § 53a-54c, our felony murder statute;[4] and (2) that the trial court, in accepting his guilty plea, failed to ascertain whether he was aware of the highest minimum sentence which could have been imposed upon him.[5]

---

[4] General Statutes § 53a-54a (c) at the time of the offense provided: "Murder is punishable as a class A felony unless it is a capital felony and the death penalty is imposed as provided by section 53a-46a."

General Statutes § 53a-35 (b) at that time provided that "[t]he maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment . . . ."

[5] At the time of the offense General Statutes § 53a-35 (c) provided that "the minimum term of an indeterminate sentence shall be fixed by the court

In support of his assertion that he believed he was exposed to the death penalty when he pleaded guilty, the plaintiff testified that when he was arrested he was told by someone "that the prosecution was going to bring back the death penalty." On cross-examination he said he thought his trial attorney "had said to me something about the—bringing back the electric chair or something like that" and that he thought it would be applicable to him. The habeas court was well within its discretion in rejecting this testimony of the plaintiff concerning his belief that he was exposed to the death penalty. The transcript of the plea proceeding indicates that he was advised by counsel of the maximum penalties for both offenses to which he pleaded guilty.[6] Furthermore, on direct examination, in response to a question about his knowledge of the maximum penalties at the time the plaintiff pleaded guilty, he said he thought his maximum exposure was "forty-five years to life." A fair interpretation of his testimony

and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years . . . ."

[6] "THE COURT: And did you discuss fully with Mr. Silbert your pleas of guilty to both those charges?

"MR. D'AMICO: Yes, I have.

"THE COURT: Are you satisfied with Mr. Silbert's advice and assistance?

"MR. D'AMICO: Completely.

"THE COURT: Now, I would guess but I would like to know, did you discuss with him what the maximum penalty for both of those offenses is?

"MR. D'AMICO: Yes, I have, your Honor.

"THE COURT: And Mr. D'Amico, I take it that discussions have been had between your attorney and the State's Attorney about this whole matter as to whether any recommendations were made, will be made to me about what to do with you?

"MR. D'AMICO: I am under the impression, your Honor, that I will receive no more than twenty years to life.

"THE COURT: I see. And that is with regard to the homicide, the murder charge. How about the other one, the assault?

"MR. D'AMICO: The assault will run concurrent, two and a half to five years.

"THE COURT: I see. Now, are you satisfied with that particular discussion between your attorney and the State's Attorney's office?"

is that, although he may have had some concern about the death penalty soon after his arrest, he did know at the time he pleaded guilty that the maximum penalty which could have been imposed for the charges against him was life imprisonment, whether or not he went to trial.

The plaintiff also testified that he had the erroneous impression that the minimum term of the indeterminate sentence he might receive could be as high as forty-five years when it actually was only twenty-seven and one-half years.[7] In rejecting this testimony the trial court relied in part upon an adverse inference drawn from the failure of the plaintiff to produce his trial attorney as a witness, implicitly assuming that his relationship to the case was such that the plaintiff would naturally have called him to testify if his testimony would have been favorable. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). We have serious reservations as to whether such an inference can be justified, because an attorney, whose competence is implicitly under attack in a habeas corpus proceeding, as in this case, is hardly a witness whom a disgruntled client would "naturally" have produced. *Fontaine* v. *Coyle,* 174 Conn. 204, 210–11, 384 A.2d 616 (1978); *State* v. *Brown,* 169 Conn. 692, 705, 364 A.2d 186 (1975). In any event, the principle is inapplicable for the reason that there is nothing in the record to indicate the availability of the "missing" witness, an essential prerequisite. *Doran* v. *Wolk,* 170 Conn. 226, 230, 365 A.2d 1190 (1976).

---

[7] For the felony murder charge in violation of General Statutes (Rev. to 1975) § 53a-54a (c), a class A felony, the greatest minimum term of the indeterminate sentence that could be imposed was twenty-five years. General Statutes § 53a-35 (c) (1). For the charge of second degree assault in violation of General Statutes § 53a-60, a class D felony, the maximum term was five years and the minimum term could not exceed half of that maximum, or two and one-half years. General Statutes § 53a-35 (c) (2). Since the sentences could have run consecutively, twenty-seven and one-half years was the greatest minimum term which could have been imposed.

We are not convinced, however, that the plaintiff's misapprehension as to his exposure in respect to the minimum term of his indeterminate sentence, even if proved, would constitute such a significant deficit in his otherwise full comprehension of the consequences of his guilty plea as to invalidate it unless the deficiency would have changed his decision to plead guilty. See *Boykin* v. *Alabama,* 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). He never testified or alleged that he would not have pleaded guilty but for his asserted misunderstanding that his minimum term exposure was forty-five years instead of twenty-seven and one-half years in the event of a conviction after trial. See *United States* v. *Timmreck,* 441 U.S. 784, 785, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979). It must be borne in mind that the plaintiff received precisely the effective sentence which he had bargained for and expected, twenty years to life. Unquestionably a great many factors must have been considered by him and his counsel in reaching a decision to enter the plea agreement, those relating to the admissibility and strength of the evidence against him as well as his maximum exposure in the event of a conviction after trial. The earliest date of parole eligibility, which is the real significance of the minimum term of an indeterminate sentence in conjunction with various time credits which a prisoner may receive while serving his sentence, was also a relevant subject for discussion. We are not persuaded, however, that a less than perfect understanding on his part of one facet of a complex evaluation of his situation by a criminal defendant must inevitably render his guilty plea "unknowing" and therefore involuntary, especially where there is no testimony of the significance of the claimed deficiency in reaching his ultimate decision to accept the plea bargain. See *Keel* v. *United States,* 585 F.2d 110, 113 (5th Cir. 1978); *Johnson* v. *United States,* 542 F.2d 941, 942 (5th Cir. 1976), cert. denied, 430 U.S. 934, 97 S. Ct. 1559, 51 L. Ed. 2d 780 (1977).

The plaintiff also relies upon the claimed failure of the trial court to follow the guidelines of Practice Book, 1963, § 2122 (4)[8] for an adequate canvass of a defendant before acceptance of his guilty plea. He focuses upon the provision requiring a trial judge to address the defendant personally and determine that he fully understands: "[t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences . . . ." The trial court did inquire whether the plaintiff had discussed with his attorney "what the maximum penalty for both of those offenses is" and received an affirmative response.[9] Although a direct response by the plaintiff expressing his understanding of the maximum penalty would have been preferable, it was not unreasonable for the court to assume that counsel, who was present when the question was asked, had performed his duty and correctly informed the plain-

---

[8] Practice Book, 1963, § 2122 provided as follows: "Sec. 2122. ADVICE TO DEFENDANT. The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

(1) The nature of the charge to which the plea is offered;

(2) The mandatory minimum sentence, if any;

(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

(Adopted June 7, 1976, to take effect Oct. 1, 1976.)"

This provision is continued in our current rule, Practice Book § 711.

[9] See footnote 6, supra. Unlike Federal Rules of Criminal Procedure § 11, which requires the court to "inform" the defendant of the maximum penalty and other consequences of his plea, Practice Book, 1963, § 2122 required that the court determine that the defendant "fully understands" those consequences.

tiff on this subject. See *State* v. *Eason,* 192 Conn. 37, 45, 470 A.2d 688 (1984). Furthermore, before the habeas court the plaintiff testified that at the time he entered his plea he thought the maximum penalty was life imprisonment.[10]

The plaintiff contends also that the obligation of the court to determine that a defendant understands "the maximum possible sentence on the charge" includes a duty to ascertain his awareness of the highest possible minimum term of an indeterminate sentence for the charge. Although such a practice is undoubtedly salutary, it is not required by the language of § 2122 which speaks only of the "maximum possible sentence on the charge" where no mandatory minimum sentence is prescribed. The fact that the rule specifies that a defendant must be informed of any *mandatory* minimum sentence which is applicable militates against a construction that the *maximum* minimum must also be specified upon the principle of inclusio unius est exclusio alterius.

Even if there were a technical noncompliance with Practice Book, 1963, § 2122 in this respect, the plaintiff would not be entitled to relief in a habeas corpus proceeding collaterally attacking his conviction without proof of actual prejudice. In *United States* v. *Timmreck,* supra, 783–85, it was held that a failure to comply with a rule of criminal procedure (Federal Rule 11) requiring advisement of any mandatory special parole term, which would require reversal upon a direct appeal, was not a sufficient defect to set aside a guilty plea in a habeas proceeding. To mount a successful collateral attack on his conviction a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on

[10] "Q. At the time you pleaded guilty, sir, did you know what the maximum penalties were that you were exposed to?

A. I thought that the maximum penalty was forty-five years to life."

appeal. *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417, reh. denied, 369 U.S. 808, 82 S. Ct. 640, 7 L. Ed. 2d 556 (1962). No such showing has been made in this case. See *Keel* v. *United States,* supra, 113.

There is no error.

In this opinion the other judges concurred.