[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, Kenneth Curtis, has moved to dismiss the charge of murder (General Statutes § 53a-54a(a)) currently pending against him. This murder charge is based upon a warrant that was issued on November 4, 1997. The case is pending in this court docketed as No. CR97-134066.
The relevant factual and procedural background of this matter is as follows.
On May 19, 1988, the defendant was arrested and charged with the crimes of murder, attempt to commit murder and assault in the CT Page 1001 first degree. The offenses were alleged to have occurred on October 30, 1987 in the parking lot of the Frog Pond Restaurant at 257 East Main Street, Stratford, Connecticut. The defendant was accused of shooting two victims. One victim, Donna Kalson, died later that day while the other victim, George Kavulich, sustained a wound which was not fatal. Immediately after these shootings, the defendant, Kenneth Curtis, shot himself in the head, causing an extensive organic brain injury. As a result of his self-inflicted brain injury, the defendant underwent brain surgery followed by a prolonged period of intensive rehabilitation therapy.
Thereafter several competency hearings were held pursuant to General Statutes § 54-56d. At the time of the final competency hearing the trial court found that the defendant was incompetent, and that there was no substantial probability the defendant would regain competency if provided with a course of treatment within the statutorily proscribed placement period. See General Statutes § 54-56d(f) and (i)(1).
The trial court recognized that the only statutorily available option was to order the defendant released from custody. In so doing, however, the court imposed a condition that the defendant submit to an annual examination to monitor whether his situation changed with respect to competency. The defendant appealed from the trial court's imposition of the annual examination condition.
In State v. Curtis, 22 Conn. App. 199, 202-03, 576 A.2d 1299
(1990), the Appellate Court agreed with the defendant's position and ruled that the trial court lacked statutory authority to impose the challenged condition. The trial court's order was set aside and the case remanded with direction that an order of unconditional release was entered. Id., 206. On June 17, 1990, an order of unconditional release was entered by this court in compliance with the Appellate Court decision.
Since that time the defendant has continued to reside in this state. During October 1997 Captain Michael Imbro, Commanding Officer of the Stratford Police Department, received information that the defendant was attending college. Captain Imbro's investigation verified this information, determining that Kenneth Curtis was in fact a part-time student attending classes at Southern Connecticut State University (SCSU) in New Haven. He also learned that the accused was at that time enrolled in two CT Page 1002 sophomore level courses.
On November 3, 1997, and again on November 7, 1997, a Stratford Police Department Detective and an Inspector from the State's Attorney's office obtained search warrants for scholastic records of the accused. The records which were obtained substantiated the enrollment of Kenneth Curtis at Middlesex Community Technical College from 1992-1995. At Middlesex he earned over 48 college credits while attaining a Grade Point Average (G.P.A.) of 3.3 or higher. During the summer of 1995 Kenneth Curtis attended Gateway Community Technical College where he also maintained a G.P.A. of 3.3. Upon his enrollment and transfer of credits to SCSU, Kenneth Curtis submitted an application indicating that his intended major was Pre-medical-Psychiatry.
As a result of the foregoing factual information, the defendant was again charged with the murder of Donna Kalson (General Statutes § 53a-54a(a)) by virtue of a warrant which was issued on November 4, 1997. (Docket No. CR97-134066). After the defendant's arrest, the State, on November 14, 1997, filed a Request for Examination to determine competency. The defendant's motion to dismiss this new murder information was filed on November 18, 1997.
 I.
The defendant argues that both the informations (Docket Nos. 33609 (1988 file) and CR97-134066) should be dismissed since there is no statutory mechanism to summon this defendant back to court. The defendant's premise is that the issuance of a new arrest warrant in 1997 was merely a ruse to circumvent the earlier Appellate Court decision in State v. Curtis, supra,22 Conn. App. 199, as well as the mandates of General Statutes § 54-56d (m).
As the Appellate Court noted in State v. Curtis, General Statutes § 54-56d "sets forth with punctilious detail the actions to be taken by a court in competency matters . . . . [and] contains carefully drawn procedures that dictate precisely what the court may order, with respect to the disposition of incompetent defendants. (Citation omitted.) Id., 203.
General Statutes § 54-56d (m) provides that defendants who are found to be not restorable to a state of competency must CT Page 1003 be released from custody or ordered to be placed in the custody of the appropriate commissioner.
The defendant's argument is that the defendant's earlier release from custody pursuant to subsection (m) of General Statutes § 54-56d precludes the State from prosecuting the defendant for the murder of Donna Kalson, regardless of any change of circumstances with respect to his competency to be tried.
This court does not agree. Neither General Statutes §54-56d (m) nor the decision of the Appellate Court in State v.Curtis, supra, 22 Conn. App. 199, support the contention that the earlier proceedings should be treated as absolute and final, thereby legally precluding any reinitiation of prosecution.
General Statutes § 54-56d (m) was amended by the legislature in 1985 (Public Acts 1985, No. 85-288). At that time language was added requiring the court "dismiss, with or without prejudice, any charges for which a nolle prosequi is not entered when the time within which the defendant may be prosecuted for the crime with which he is charged, as provided in section54-193, has expired." General Statutes §54-193 (a) provides: "There shall be no limitation of time within which a person may be prosecuted for a capital felony, a class A felony or a violation of section 53a-54d."
The defendant has urged this court to adopt his view that under § 54-56d there is no lawful mechanism to reinstitute the prosecution in his case. The statute in question does not support his contention nor does any of the legislative history of this statute. In fact, as has been pointed out by the State in its memorandum of law (p. 5), Representative Wollenberg addressed this issue in the 1985 session of the legislature by commenting: "Under this bill, the charges would not be dismissed until the statute of limitations ran on the particular crime. If the crime were murder, where there is no statute of limitations, then it would never be dismissed so that if he became competent, he could be charged with the crime. 28 H.R. Proc., Pt. 15, 1985 Sess. p. 5358.
Representative Wollenberg's comments clearly reflect a recognition of the obvious, namely, the statutory scheme as CT Page 1004 provided in § 54-56 (d) does not preclude reinstitution of the class A felony of murder charge.
In agreeing with the conclusion of the District of Columbia Court of Appeals in Khiem v. United States, 612 A.2d 160
(D.C.App. 1992), cert. denied, 506 U.S. 924, (1993), our Supreme Court in State v. Garcia, 233 Conn. 44, 76, 658 A.2d 947 (1995), cited the following language taken from Khiem v. United States, supra,
612 A.2d 167:
 Accordingly, if all of the declarations on [the defendant's] behalf were taken at face value, and if his legal contentions were to prevail, he might soon be a free man without his guilt or innocence of [committing murder] having first been established, and this could continue indefinitely unless he regained his competency to stand trial. Unless we view the trial of homicide cases, the deterrence and punishment of crime, and the incapacitation of criminals as insignificant, the government's law enforcement interest in determining whether [the defendant committed the crime he is accused of] is far more than merely symbolic.
While the issue in State v. Garcia, supra, 233 Conn. 44, concerned involuntary medication of an incompetent defendant to restore competency, rather than the possible recovery of an accused who has at an earlier time been found incompetent and nonrestorable, the above language specifically pointed to by the Supreme Court has application and some merit in considering the overall issues in this case.
The defendant also claims that the decision of our Appellate Court in State v. Curtis, supra, 22 Conn. App. 199, expressly prohibits bringing this defendant back into court to determine his competency.
The issue and discussion in State v. Curtis, as viewed by this court, concerned the authority under § 54-56d (m) of the trial court to require annual examinations of the defendant in order to determine whether his competency has been regained. While the decision held that this statute did not provide for such annual examinations, the Appellate Court did not deal with CT Page 1005 the issue of reinstitution of the murder charge if the defendant were ever to become competent at some future date. This issue was not before the Appellate Court and the opinion does not support the defendant's contention that the earlier incompetency finding and his statutorily required unconditional release must be considered final, absolute, analogous to dismissal and a permanent bar to any reinstitution of the murder prosecution.
Simply stated, neither § 54-56d nor the State v. Curtis
decision mandate against the action which has been taken by the state in this case in reinstituting the murder charge against Kenneth Curtis.
Given the new factual information regarding the defendant's academic endeavors and achievements in recent years, which may suggest the defendant's competency has returned, the State may well have been considered remiss had it not taken action to reinstitute the murder charge against Kenneth Curtis.
"Weighing against the minimal interests in finality presented by this case are strong social and legislative policies aimed at the effective administration of criminal justice." State v.Ellis, 197 Conn. 436, 477, 497 A.2d 974 (1985), citing In reJuvenile Appeal (83-DE), 190 Conn. 310, 318-19, 460 A.2d 1277
(1983).
 II.
The defendant next argues that this court does not have jurisdiction over the defendant, claiming "in the case sub judice, the state is attempting to legislate and create, by the use of the arrest warrant, a mechanism not provided for by statute or case law, to compel this defendant to be examined for competency purposes, which was directly prohibited by the Appellate Court in Curtis, supra." The defendant further contends that the issuance of the new warrant in 1997, nine years after the original and still pending warrant, does not provide this court with jurisdiction over the defendant.
The defendant accurately points out that the 1988 and 1997 arrest warrants do in fact rely on the same facts, police investigation and statements to establish probable cause that the defendant committed the crime of murder. The 1997 arrest warrant contains additional information regarding the defendant's competency history and higher education academic undertakings and CT Page 1006 accomplishments. The academic information in the 1997 warrant results from the issuance of a search and seizure warrant.
This court does not agree that, due to the existence of an earlier arrest warrant based upon the same facts, jurisdiction over the defendant is now lacking. While the word jurisdiction is a term of large and comprehensive import, it may be said to be the authority by which courts and judicial officers take cognizance of and decide cases. Black's Law Dictionary (6th Ed. 1990)
Our Appellate Court addressed the necessary requirements for proper jurisdiction in any given matter in State v. Anthony,24 Conn. App. 195, 588 A.2d 214, cert. denied, 502 U.S. 913 (1991). "First, the case at issue must belong to the general class of cases over which the court has cognizance. Second, the parties must have been properly served and brought before the court. Third, the issue to be decided must be alleged in the complaint.Telesco v. Telesco, 187 Conn. 715, 719-20, 447 A.2d 752 (1982)."Id., 201.
These requirements are unquestionably satisfied in this case and the defendant's motion to dismiss and supporting memorandum of law do not address or take issue with this conclusion. The argument of the accused seems to be that the earlier incompetency finding and his unconditional release legally bar the issuance of the 1997 arrest warrant.
Once the defendant was released in 1990, the most appropriate step to reinitiate the prosecution was by the issuance of a new warrant. See generally A. Spinella, Connecticut Criminal Procedure (1985), c. IX, § 3A, p. 621.
 III.
The defendant also argues that the actions of the State in this case violate his right to due process as guaranteed to him by the fourteenth amendment to the United States constitution as well as article first, § 9, of the Connecticut constitution.
The defendant's due process argument revolves, in part, around the same claims that this court has addressed in parts I and II of this decision, namely, that his new arrest on November 4, 1997 was not warranted by law and done to circumvent the Statev. Curtis decision and General Statutes § 54-56d. Since this CT Page 1007 court has found these arguments to be without merit, the very same claims do not support the defendant's assertion of a violation of his federal and state constitutional due process rights.
The fourteenth amendment to the United States constitution provides in part: "[N]or shall any State deprive any person of life, liberty or property without due process of law . . ." Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."
Where the double jeopardy clause is inapplicable, due process protects against vindictive or coercive use of the power to prosecute." State v. Ellis, supra, 197 Conn. 478. However, our Supreme Court has recognized and traditionally afforded the State broad discretion in determining what crime or crimes to charge in any given situation. State v. Chetcuti, 173 Conn. 165, 168,377 A.2d 263 (1977).
In an appeal from a habeas corpus proceeding, State ex rel.Andrew Deisinger v. Darold A. Treffert, M.D., 85 Wis.2d 257,270 N.W.2d 402 (1978), the Supreme Court of Wisconsin addressed the issue of the continued confinement of the incompetent petitioner after expiration of the maximum sentence for the charged crime (disorderly conduct).
The Wisconsin Supreme Court, in dicta, stated as follows:
 While the conclusion reached calls for the defendant's release on civil commitment at the end of the maximum penalty period, this does not preclude the state from bringing the party to trial at some future date if he regains competency. The ability of the state to allow the indictment to pend while the accused is released but still awaiting competency is only limited by the defendant's right to a speedy trial. State ex rel. Porter v. Wolke, 80 Wis.2d 197, 257 N.W.2d 881
(1977); Barker v. Wingo, 407 U.S. 514, 92 S.Ct 2182, 33 L.Ed.2d 101 (1972); Little v. Twomey,
[477 F.2d 767 (7th Cir. 1973)]; United States v. Lancaster, 408 F. Sup. 225 (D.C. Dist. Ct. 1976); United States v. Beidler, 417 F. Sup. 608 (Fla. M.D. Dis Ct.). Id., 408-09. CT Page 1008
In furtherance of his due process claim, the defendant herein also argues that his arrest in 1997 has created additional burdens for him which did not exist in the pending 1988 arrest. The defendant points to the fact that under the 1988 arrest he could not be required to submit to any additional competency examinations, he could not be required to post a new bond and the time limitation for a probable cause hearing could not be extended. Also, the defendant argues that the nine year lapse since his original arrest affects his fundamental liberty interest.
The action of the State in this case cannot be said to be vindictive or coercive in any way and the defendant has not asserted or attributed any such motive to the State's action in obtaining a new arrest warrant. In fact, the defendant concedes that he cannot find any legal authority supporting his due process argument.
While it may be true that under the 1988 arrest file (No. 33609) the defendant could not be required to submit to an additional competency examination and an additional bond could not be required, these assertions, standing alone, simply do not rise to a level which is "shocking to the universal sense of justice. United States v. Russell, 411 U.S. 423, 432,93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).
The defendant's due process claims do not reach the necessary threshold to demonstrate a denial of this basic constitutional right. A defendant, to demonstrate a denial of due process, "must show that actual significant prejudice to him has resulted."Parham v. Warden, 172 Conn. 126, 134, 374 A.2d 137 (1976).
The defendant's case based on his arrest in 1988 never proceeded beyond arraignment and several competency hearings. These proceedings did not put him in judicial jeopardy. Wharton's American Criminal Law (15th Ed. Torcia 1993) § 57, pp. 427-32. If the defendant's competency has in fact been regained, this is not a situation where he will never have a chance to have his day in court. In fact, he has not been deprived of any of the procedural protections which our law affords to everyone. This court fails to see any reasonable basis to conclude that the reinstituted murder prosecution against this defendant has caused him to be actually and significantly prejudiced in any way. CT Page 1009
 IV.
Finally, as an additional argument, the defendant claims that the State failed to provide the defendant with a probable cause hearing within the applicable 60 day time period pursuant to General Statutes § 54-46a(b). This statutory time period is subject to being "extended by the court for good cause shown. . . ." Id. A hearing in probable cause on the 1988 murder charge never took place due to the defendant's incompetency. The defendant now argues that if he was competent in 1992, when he was enrolled in college courses, the statutory time period was thereafter violated since no hearing in probable cause ever took place. No authority is cited to support this assertion.
Section 54-46a(a) provides that "[t]he accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause."
The issue of waiver was the subject of the decision in Statev. Ramos, 201 Conn. 558, 570 A.2d 9 (1986). The court stated: "The existence of the waiver depends on `the unique circumstances of each case'; Adams v. United States, ex rel. McCann,317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 269 (1942); and the particular facts and conditions surrounding that case,`including the background, experience and conduct of the accused.' Johnson v.Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);State v. Sharkley, 188 Conn. 697, 707, 453 A.2d 441 (1982). Thewaiver, however, does not have to be express, but may be impliedfrom the acts or conduct of the defendant. McClain v. Manson,183 Conn. 418, 430, 439 A.2d 430 (1981)." (Emphasis added.) Id., 603-04.
In this case the defendant by virtue of his asserted condition in 1988, which necessitated several competency examinations and hearings, relinquished his right to a probable cause hearing within the prescribed time period.
Based upon the November 1997 arrest recharging the defendant with the crime of murder, the defendant will be entitled to a hearing in probable cause upon resolution of this motion by this court and any other matters (e.g. competency) which must logically and necessarily precede the hearing. Such matters as are now being considered by this court obviously qualify as good cause for extension of the 60-day statutory time period and again must be considered as a waiver of the 60-day period by the CT Page 1010 accused since the issues being raised by him must be legally resolved before the hearing in probable cause.
 V.
The unique facts and background of this case underscore the important principle that finality must be balanced against the needs of criminal justice and the community's interest in fairly and accurately determining guilt or innocence.
In the words of the legendary Justice Cardozo: "[J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." Snyderv. Massachusetts, 251 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674
(1934).
The Motion to Dismiss is denied.
RONAN, J.