STATE OF CONNECTICUT *v.* KENNETH CURTIS
(8169)

BORDEN, DALY and LAVERY, Js.

Argued February 7—decision released May 18, 1990

*Salvatore C. DePiano,* with whom was *Edward F. Czepiga II,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the trial court's imposition of a condition on the order releasing him from custody. That order was rendered after the court found that he was incompetent to stand trial and that there was no substantial probability that his competency would be restored. The dispositive issue is whether the court has the authority under General Statutes § 54-56d (m)[1] to require the defendant to submit to an annual examination for the purpose of determining whether his competency has been regained. We

---

[1] General Statutes § 54-56d (m) provides: "If at any time the court determines that there is not a substantial probability that the defendant will become competent within the period of treatment allowed by this section, or if at the end of that period the court finds that the defendant is still not competent, the court shall either release the defendant from custody or order the defendant placed in the custody of the commissioner of mental health, the commissioner of children and youth services or the commissioner of mental retardation. The commissioner given custody or his designee shall then apply for civil commitment according to chapter 306 or 368t. The court shall hear arguments as to whether the defendant should be released or should be placed in the custody of the commissioner of mental health, the commissioner of children and youth services or the commissioner of mental retardation. The court shall dismiss, with or without prejudice, any charges for which a nolle prosequi is not entered when the time within which the defendant may be prosecuted for the crime with which he is charged, as provided in section 54-193, has expired. Notwithstanding the erasure provisions of section 54-142a, police and court records and records of any state's attorney pertaining to a charge which is nolled or dismissed without prejudice while the defendant is not competent shall not be erased until the time for the prosecution of the defendant expires under section 54-193. A defendant who is not civilly committed as a result of an application made by the commissioner of mental health, the commissioner of children and youth services or the commissioner of mental retardation pursuant to this section shall be released. A defendant who is civilly committed pursuant to such an application shall be treated in the same manner as any other civilly committed person."

conclude that the court has no such authority. Accordingly, we reverse the decision of the trial court.

On October 30, 1987, the defendant allegedly shot two victims. One died later that day from a gunshot wound to the head, and the other received a nonfatal wound to the leg. Immediately after these shootings, the defendant shot himself in the head, causing extensive organic brain injury. In June, 1988, the defendant was charged with murder in violation of General Statutes § 53a-54a (a), attempted murder in violation of General Statutes § 53a-49 and 53a-54a (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).

Several competency hearings were held pursuant to General Statutes § 54-56d. At the first hearing, in August, 1988, the trial court, *Barnett, J.,* found that the defendant was incompetent to stand trial. See General Statutes § 54-56d (a). The court was unable, however, to make a further finding as to whether there was a substantial probability that the defendant's competency would be restored; see General Statutes § 54-56d (f); and it ordered a reexamination of the defendant. Additional hearings were held on the issue of the defendant's potential for restoration.

At the final competency hearing, the trial court, *Damiani, J.,* found that the defendant was incompetent, and that there was no substantial probability that the defendant, if provided with a course of treatment, would regain competency within the eighteen month placement period. See General Statutes § 54-56d (f) and (i). The court then properly determined that its actions were governed by General Statutes § 54-56d (m).

Under that statute, the court recognized that its actions were circumscribed; it could either "release the defendant from custody or order the defendant placed in the custody of the commissioner of mental health,

the commissioner of youth services or the commissioner of mental retardation." Under § 54-56d (m), an incompetent defendant is placed with one of the three commissioners in order to be civilly committed, and "[a] defendant who is not civilly committed as a result of an application made by the commissioner of mental health, the commissioner of children and youth services or the commissioner of mental retardation pursuant to this section shall be released."

The court determined that the defendant did not qualify for placement with any of the three statutory custodians because he did not meet the statutory commitment criteria. It then ordered that the defendant be released from custody. Although recognizing that the release of the defendant from custody was the only option available under the statute, the court considered an unconditional release of the defendant without requiring periodic examinations by the diagnostic team to be tantamount to a dismissal of the charges. It then imposed such an annual examination as a condition of the defendant's discharge. The defendant appeals from the court's imposition of that condition on his release.

The defendant claims that the court was without authority, either express or implied, under General Statutes § 54-56d (m), to place any conditions on his release. He argues that the ordinary meaning of the word "release" precludes the court from encumbering his release with conditions, and that the statutory requirement that a defendant who is not civilly committed must be released implies that the release contemplated under this statute must be unconditional. He further argues that the legislature could have permitted conditions of release under General Statutes § 54-56d (m), as it did under General Statutes § 54-56d (i) where conditions of release are permitted when ordering outplacement for the purpose of rendering the defendant competent.

The state claims that the court's order of annual examinations was within the purview of the statute. It argues that the statute, as applied to this case, was ambiguous because the defendant did not qualify for commitment with any of the three statutory custodians, and because the charges still outstanding against the defendant include murder, which has no statute of limitations. The state contends that, therefore, it was necessary for the court to fashion a reasonable order in accordance with the meaning and intent of the statute, and that, in the absence of institutionalization of the defendant, the imposition of a yearly examination was necessary for the court to be kept abreast of possible improvements in the defendant's mental state that may allow for the prosecution to go forward. We agree with the defendant.

The procedures for determining competency and the placement alternatives available if a defendant is found incompetent are governed by General Statutes § 54-56d. This statute sets forth with punctilious detail the actions to be taken by a court in competency matters. Once the court makes certain findings regarding the defendant's competency and his chances for restoration; see General Statutes § 54-56d (f); the statute contains carefully drawn procedures that dictate precisely what the court may order with respect to the disposition of incompetent defendants.

General Statutes § 54-56d (m) is specific in its mandate. It requires that "the court shall either release the defendant from custody or order the defendant placed in the custody of . . . [one of three] commissioner[s]. The commissioner given custody or his designee shall then apply for civil commitment according to chapter 306 or 368t. . . . A defendant who is not civilly committed as a result of an application made by the commissioner . . . pursuant to this section *shall be released.*" (Emphasis added.) This clear and unambig-

uous language does not by its express terms give the court discretion to impose conditions on an incompetent defendant's release, and we find no basis for the implied authority to do so.

Section § 54-56d is drafted with clarity and precision, and addresses exactly what the court may do in this factual situation. Here, the court made two express findings regarding the defendant's competency. First, it found that the defendant was incompetent, and, second, it found that there was no substantial probability that his competency would be regained. Given these findings, under this statutory scheme for determining competency the court's subsequent action regarding the defendant's placement alternatives was controlled by General Statutes § 54-56d (g), which directed the court to "follow the procedure set forth in subsection (m) of this section." Subsection (m) is a virtual blueprint for what the court may order when an incompetent defendant is found to have no substantial probability of regaining his competency. The court here acted improperly in framing a release order that, by including a condition thereupon, exceeded the boundaries of the statute.

In *State* v. *Hanson,* 210 Conn. 519, 556 A.2d 1007 (1989), our Supreme Court recently interpreted the word "release" as used in General Statutes § 17-251 (b). That statute requires that a hearing must be held at least once every five years to determine whether a convicted defendant, who was sentenced to the Whiting Forensic Institute pursuant to General Statutes § 17-245 (c), is eligible to be discharged from the institute prior to the expiration of the maximum period of his sentence, and if discharge is appropriate, to determine his disposition. General Statutes (Rev. to 1989) § 17-251 (b) provided that "[i]f the court determines the patient should be discharged from the institute, it shall then determine whether the patient should be *released,*

granted parole or returned to the custody of the commissioner of correction." (Emphasis added.) The *Hanson* court concluded that the word "release" as used in the statute was clear and unambiguous; id., 528; and accordingly interpreted it based on its plain meaning.[2]

Under a similar analysis, we conclude that the plain meaning of the word "release" as used in General Statutes § 54-56d (m) means an unconditional rather than a conditional discharge. Section 54-56d (i) expressly provides for conditions of release in connection with outpatient treatment. Had the legislature intended that conditions of release be imposed on incompetent defendants who have no substantial probability of regaining competency, it could have readily included the necessary language.

The state argues that the burden on the defendant of submitting to a yearly examination is minor. Such a condition, however, would constitute an obligation of the defendant that is not required of the general community. When the state imposes special conditions on someone, thereby restricting his freedom, it is not, in our view, an inconsequential matter, no matter how the state wishes to categorize the degree of impingement. Proper judicial caution counsels that we hesitate to find such authority unless it is clearly stated. Compare, e.g., General Statutes § 53a-30 (giving the court authority to impose various conditions of probation); General Statutes § 54-64a (authority to impose conditions of release on bond).

Finally, unconditional release under § 54-56d (m) is a reasonable legislative determination. General Statutes § 54-56d (m) requires the release of defendants

---

[2] Thereafter, the legislature enacted Public Acts 1989, No. 89-89, amending § 17-251 (b) to provide that "[i]f the court determines the patient should be discharged from the institute, he shall be returned to the custody of the commissioner of correction."

who are incompetent to stand trial, have no substantial probability of being restored to competency and do not require civil commitment under either chapter 306 for the mentally ill or under chapter 368t for the mentally retarded. Given that these three findings must be made by the court prior to a defendant's release, we see no reason to read § 54-56d (m) so as to permit the imposition of conditions, such as an annual examination, on that release. Here, it is undisputed that there was little likelihood that the defendant's competency would be restored so that he could later stand trial. More significantly, because civil commitment was found to be unnecessary, there is no reason to believe that the defendant represents a danger to himself or others. See General Statutes § 17-177.

The state does not argue to the contrary, but instead seeks to have this condition imposed so that it can monitor the defendant's competency even though restoration is highly unlikely. It may well be beneficial for the state to have a formal mechanism to follow the progress of a harmless incompetent defendant who stands little chance of recovery. Absent statutory authority to do so, however, we will not strain the plain wording of the statute to reach such a result.

The order is set aside and the case is remanded with direction that an unconditional order of release be entered.

In this opinion the other judges concurred.