[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The defendant, Kenneth Curtis, has moved to dismiss the charge of murder (General Statutes § 53-54a(a)) pending against him on the basis that a final judgment was entered on June 5, 1989, finding him incompetent to stand trial. The defendant relies on the doctrine of collateral estoppel arguing that the state is legally precluded from taking any further action to prosecute this charge since the court has previously (1989) found the defendant incompetent and not restorable within the statutory time frame.
I. The relevant factual and procedural background of this matter is as follows. On May 19, 1988, the defendant was arrested and charged with the crimes of murder, attempt to commit murder and assault in the first degree. The offenses were alleged to have occurred on October 30, 1987 in the parking lot of the Frog Pond Restaurant at 257 East Main Street, Stratford, Connecticut. The defendant was accused of shooting two victims. One victim, Donna Kalson, died later that day while the other victim, George Kavulich, sustained a wound which was not fatal. Immediately after these shootings, the defendant, Kenneth Curtis, shot himself in the head, causing an extensive organic brain injury. As a result of his self-inflicted brain injury, the defendant underwent brain surgery followed by a prolonged period of CT Page 1853 intensive rehabilitation therapy.
Thereafter several competency hearings were held pursuant to General Statutes § 54-56d. At the time of the final competency hearing the trial court found that the defendant was incompetent, and that there was no substantial probability the defendant would regain competency if provided with a course of treatment within the statutorily prescribed period. See General Statutes § 54-56d(f) and (i)(1). The trial court recognized that the only statutorily available option was to order the defendant released from custody. In so doing, however, the court imposed the condition that the defendant submit to an annual examination to monitor whether his situation changed with respect to competency.
The defendant appealed from the trial court's imposition of the annual examination condition. In State v. Curtis,22 Conn. App. 199, 202-03, 576 A.2d 1299 (1990), the Appellate Court agreed with the defendant's position and ruled that the trial court lacked statutory authority to impose the challenged condition. The trial court's order was set aside and the case remanded with direction that an order of unconditional release be entered. Id., 206. On June 17, 1990, an order of unconditional release was entered by this court in compliance with the Appellate Court decision.
Since that time the defendant has continued to reside in this state. During October 1997, Captain Michael Imbro, Commanding Officer of the Stratford Police Department, received information that the defendant was attending college. Captain Imbro's investigation verified this information, determining that Kenneth Curtis was in fact a part-time student attending classes at Southern Connecticut State University (SCSU) in New Haven. He also learned that the accused was at that time enrolled in two sophomore level courses.
On November 3, 1997, and again on November 7, 1997, a Stratford Police Department Detective and an Inspector from the State's Attorney's office obtained search warrants for scholastic records of the accused. The records which were obtained substantiated the enrollment of Kenneth Curtis at Middlesex Community Technical College from 1992-1995. At Middlesex he earned over 48 college credits while attaining a Grade Point Average (G.P.A.) of 3.3 or higher. During the summer of 1995 Kenneth Curtis attended Gateway Community Technical College where CT Page 1854 he also maintained a G.P.A. of 3.3. Upon his enrollment and transfer of credits to SCSU, Kenneth Curtis submitted an application indicating that his intended major was Pre-medical-Psychiatry.
As a result of the foregoing factual information, the defendant was again charged with the murder of Donna Kalson (General Statutes § 53a-54a(a)) by virtue of a warrant which was issued on November 4, 1997. (Docket No. CR97-134066). After the defendant's arrest, the state, on November 14, 1997, filed a Request for Examination to determine competency. The defendant's first motion to dismiss this new murder information was filed on November 18, 1997. This court denied the motion on January 29, 1998. State v. Curtis, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 134066 (January 29, 1998, Ronan, J.). On June 17, 1998, the defendant again moved to dismiss the information which motion is the subject of this decision.
In this motion the defendant seeks dismissal of the pending charge premised on the argument that the state's attempt to proceed with further competency hearings against the defendant is a violation of the fifth and fourteenth amendments and is barred by the doctrine of collateral estoppel. Specifically, the defendant argues that previous court decisions have already litigated the issue of competency and firmly established that the defendant would not be able to regain competency within the statutory time period. Thus, the defendant asserts that any new hearings would merely be an attempt to relitigate an issue already decided and thus violate the doctrine of collateral estoppel.
II. In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189,25 L.Ed.2d 469 (1970), the United States Supreme Court held that the principle of collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy. Id., 445." `Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . ." Ashe v. Swenson, 397 U.S. 436, 443 (1970).[1]
The Ashe court's application of collateral estoppel has been the reference point for numerous discussions in a number of CT Page 1855 decisions of Connecticut's appellate courts. These decisions have generally held that collateral estoppel applies in either one of two ways: 1) it may bar prosecution or argumentation of facts necessarily established in a prior proceeding; or 2) it may completely bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element of the conviction the government seeks. State v. Hope,215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied,498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991).
Though the defendant does not specify which prong of collateral estoppel he relies on, the specific facts of this case indicate that the defendant must necessarily rely on the first prong.[2] In particular, the defendant points to two prior findings — the original finding by the court that the defendant would not be able to regain his competency within the statutory time period; and the subsequent decision of the appellate court as indicating that the defendant's competency has already been determined and this determination permanently bars this prosecution for murder.
In the context of collateral estoppel, issue preclusion generally arises only when "an issue is actually litigated and determined by a valid and final judgment and that determination is essential to the judgment. . . ." (Citations omitted; internal quotation marks omitted.) State v. McDowell, 242 Conn. 648, 655,699 A.2d 987 (1997). In the present case, it seems clear that the issue of the defendant's competency was never determined with the finality necessary for collateral estoppel to attach.
The court which held the competency hearings determined that the defendant would not be able to regain competency within the statutorily proscribed period. That court's decision to impose conditions of annual exams to determine if competency was regained demonstrates that the court did not feel that the issue of the defendant's competency was resolved with any definite finality. Similarly, the Appellate Court's decision in State v.Curtis, supra, 22 Conn. App. 199, does not support the contention that the earlier hearings should be treated as absolute and final. Rather, the decision in Curtis holds that the lower court erred in imposing conditions on the release of the defendant. The decision did not deal with, nor address, the issue of the defendant's restoration to competency in the event that this were ever to occur.
CT Page 1856 Indeed, as this court has previously observed, such a finality would be inconsistent with the intent of the legislature in leaving the possibility open that the defendant may one day become competent to stand trial. See State v. Curtis, supra, Superior Court, Docket No. 134066.
In Ashe, the court cautioned that the "rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. . . . The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceeding. . . ." (Citations omitted; internal quotation marks omitted.) Ashe v. Swenson, supra,397 U.S. 444; see also, State v. Hope, supra, 215 Conn. 585.
The appellate courts in Connecticut have been especially wary of applying collateral estoppel in criminal cases where a previous issue was "established" during an administrative-type hearing. In the criminal context, the decisions from such hearings may often be incompatible with the interest of the state in determining guilt or innocence. In State v. Fritz,204 Conn. 156, 172, 527 A.2d 1157 (1987),[3] the court stated "the purpose of the administrative proceedings, therefore, is to police licensing requirements within the state, while the state's attorney's interest in the criminal proceeding is in having guilt or innocence determined under the applicable criminal law and in seeing that proper punishment is meted out in the event that the criminal law has been violated . . . the state's interest in having guilt or innocence determined is not adequately served in an administrative proceeding because . . . the state's attorney has no control over the timing, substance or litigation of charges lodged against the defendant by the department of consumer protection." Id., 176-77. See also State v. Barlow,30 Conn. App. 36, 41, 618 A.2d 579 (1993) (state not collaterally estopped from prosecuting defendant even though motor vehicle commissioner found that the defendant had not refused to take a breath analyzer test).
III. The Connecticut Supreme Court's decision in State v.McDowell, supra, 242 Conn. 648, further distinguished the applicability of collateral estoppel as a bar to a second prosecution following a non-trial type hearing. In that case, during a hearing on the revocation of probation, the probation board found that while the defendant had violated his probation by threatening an employee of the grocery store, and by CT Page 1857 committing a breach of the peace and an assault, the state had not presented sufficient evidence to establish that a robbery or an attempted larceny had occurred. When criminal charges pertaining to the robbery were brought against the defendant, the defendant moved to dismiss these charges on the ground that the underlying facts had already been determined before the probation board. The Connecticut Supreme Court affirmed the trial court's decision to deny the motion to dismiss. The McDowell court concluded that in "criminal matters, judicial economy must give way to the demand for the truth." State v. McDowell, supra,242 Conn. 657.
Thus, the McDowell court refused to apply collateral estoppel even though the "formal prerequisites" were met. Id., 656, citingPeople v. Fagan, 498 N.Y.S.2d 335 (N.Y. 1985) ("[t]he correct determination of guilt or innocence is paramount in criminal cases . . . and the People's incentive to litigate in a felony prosecution would presumably be stronger than in a parole revocation proceeding . . ."). See also Commonwealth v. Cosgrove,629 A.2d 1007, 1011 (Penn. 1993), appeal denied, 648 A.2d 786 (1994)("[i]t is only through a criminal trial at which the defendant is presumed innocent and the Commonwealth bears the burden of proof of guilt beyond a reasonable doubt that contested issues of criminal culpability are determinedlwith finality. To cede this responsibility to a setting that does not adhere to the procedural safeguards necessary for a fair adjudication of guilt, such as a probation revocation hearing, would result in a perversion of the criminal justice system").
The logic and reasoning of both the Fritz and McDowell courts in refusing to apply collateral estoppel as a bar to further criminal proceedings is equally applicable to the competency hearings in the present case. While the competency hearings were held before the court instead of an administrative agency-type board, the concerns in precluding further criminal proceedings are equally valid.
In addressing the defendant's original motion to dismiss, the court stressed the "important principle that finality must be balanced against the needs of criminal justice and the community's interest in fairly and accurately determining guilt or innocence." State v. Curtis, supra, Superior Court, Docket No. 134066. This principle is equally important here. Thus, even if there was a final determination as to the incompetency of the defendant and the "formal prerequisites" of collateral estoppel CT Page 1858 were met, the principles of finality in a criminal proceeding — the determination of guilt or innocence — outweigh any benefits that collateral estoppel might afford the defendant. This is especially true where, as in the present case, the defendant has not been forced "to run the gauntlet" a second time following acquittal. Ashe v. Swenson, supra, 397 U.S. 445-46.
The motion to dismiss is denied.
Ronan, J.