### STATE OF CONNECTICUT *v.* CASSIDY D.*

Superior Court, Judicial District of Middlesex, Juvenile Matters
File No. 0002387900

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of this court.

An appeal to the Appellate Court was filed by the intervenor, the commissioner of children and families, on February 18, 2010, Docket No. AC 31898. On January 28, 2011, the appeal was withdrawn.

Memorandum filed February 17, 2010

*Proceedings*

RUBINOW, J. This memorandum of decision addresses both the court's disposition of this delinquency matter as well as issues raised by the Objection to Proposed Disposition of Commitment (DCF's Objection), which was filed by the intervenor, the Commissioner of Children and Families (DCF or the department) on January 12, 2010. Both the respondent, Cassidy D., and state, as the prosecuting authority in the underlying delinquency proceeding, proposed that Cassidy D. be committed to DCF as the disposition of his conviction for violation of a juvenile probation

order. DCF objected to this proposed disposition claiming that the court lacks jurisdiction to order a delinquency commitment because Cassidy D. is over the age of eighteen.

The court received detailed and highly analytical briefs, including responsive and rebuttal briefs, from the prosecuting state's attorney, defense counsel and from the Assistant Attorney General in support of and in opposition to DCF's Objection. Upon consideration of the parties' claims as a whole, and the record presented in Cassidy D.'s case, the court found inadequate grounds for sustaining DCF's Objection. To the contrary, the court found that it not only had jurisdiction to commit Cassidy D. to DCF, but also that the court was required to do so under the circumstances of this case.

Accordingly, after a hearing on the issues on January 27, 2010, this court orally overruled the department's objection, and imposed the disposition of a delinquency commitment for Cassidy D. In that DCF has raised issues related to jurisdiction, the court now sets forth its written "conclusion as to each claim of law raised by the parties and the factual basis" for its decision, consistent with the requirements of Practice Book § 64-1 (a).

I

## PROCEDURAL HISTORY

There is no contest over the following factual findings:

Cassidy D. was born on January 29, 1991. On June 18, 2007, when he was fifteen years of age, Cassidy D. was charged with having engaged in Sexual Assault in the first degree and Risk of Injury to a Minor by way of sexual conduct, which conduct was alleged to have occurred prior to September 23, 2006. Cassidy D.'s younger sister was the victim of these delinquent acts.

As each charge constituted a serious juvenile offense (SJO), pursuant to the then-applicable version of General Statutes (Rev. to 2005) § 46b-120 (12), and as Cassidy D. was more than fourteen years old when the offenses were alleged to have occurred, the prosecution was automatically transferred to the adult criminal docket. See General Statutes § 46b-127 (a). On April 1, 2009, Cassidy D. moved to transfer the case back to the Superior Court for Juvenile Matters. In May, 2009, the matter was returned to the Juvenile Court in Willimantic for further prosecution under Docket No. 00002295332. See General Statutes § 46b-127 (d).

On August 20, 2009, when he was eighteen years of age, Cassidy D. admitted a single count of Risk of Injury to a Minor as a serious juvenile offense, and was convicted as a delinquent. The court (*Graziani, J.*) ordered him to serve a two year period of juvenile probation, which probation was to remain in effect until August 20, 2011. As ordered by the Juvenile Court, the relevant conditions of Cassidy D.'s probation included: "Remain at the residence and in the care and custody [of his father, at a designated address] . . . Attend and actively part[icipate] in sex off[ender] evaluation and treatment . . . Abide by the rules of the tr[eatment] prog[ram] to the satisfaction of your PO and your treatment provider . . . Any other cond[itions] deemed appropriate by the PO."

Thereafter, Cassidy D. came under the supervision of juvenile probation through the Superior Court for Juvenile Matters at Middletown. On December 4, 2009, a juvenile probation officer submitted an affidavit which supported a finding of probable cause that, on or before December 3, 2009, Cassidy D. had violated one or more of the provisions of his juvenile probation orders; at the time of the alleged violations, Cassidy was eighteen years old. On December 4, 2009, this court (*Rubinow, J.*) ordered a Take into Custody Order for Cassidy D.,

pursuant to Practice Book § 31a-13 (a) (1). Cassidy D. was served and taken into custody prior to December 7, 2009; he was held in detention from that date until his commitment.

On December 7, 2009, when he was presented before the Superior Court for Juvenile Matters at Middletown, Cassidy D. was charged in Docket No. 0002387900 with violation of juvenile probation by way of then effective General Statutes (Rev. to 2005) § 46b-120 (6) (C).[1] On December 30, 2009, again when he was eighteen years old, Cassidy D. admitted that he had violated his juvenile probation, and, pursuant to § 46b-120 (6) (C), he was convicted as delinquent on that sole count. The state, as the prosecuting authority, and the respondent affirmed their joint intention to argue that, by way of disposition, the court order a delinquency commitment to DCF for Cassidy D. The court ordered the requisite predispositional study (PDS) pursuant to General Statutes § 46b-134.[2]

On December 16, 2009, while the PDS was pending, DCF filed a Motion to Intervene, explaining that the Commissioner of DCF "requests permission to intervene in [this] matter for the purpose of addressing the proposed plan of commitment." On January 12, 2010,

[1] Although the statute has been amended for offenses occurring on or after January 1, 2010, at the time that is relevant to this matter, § 46b-120 (6) provided: "a child may be convicted as 'delinquent' who has violated . . . (C) conditions of probation as ordered by the court . . . ." General Statutes (Rev. to 2005) § 46b-120 (6). This delinquency offense, now described in § 46b-120 (5) (C), creates a status that is unique to juvenile matters, and unknown to Connecticut's Penal Code. See General Statutes § 53a-32, establishing crime of violation of probation or conditional discharge.

[2] General Statutes § 46b-134 provides, in pertinent part: "Prior to the disposition of the case of any child convicted of a delinquent act, investigation shall be made of the facts as specified in this section by the probation officer, and until such investigation has been completed and the results thereof placed before the judge, no disposition of the child's case shall be made. . . ."

DCF's Objection, which is the subject of the court's present attention, was filed. On January 20, 2010, DCF filed a Memorandum in Support of Motion to Intervene; after a hearing on that date, the court granted DCF intervenor status for purposes of addressing the issues raised in its pending objection.

Cassidy D.'s completed PDS was timely submitted and was made available to the parties and to the intervenor. Among other things, the PDS presented juvenile probation's opinion that no community services were appropriate for Cassidy D., and that probation's services could neither achieve rehabilitation for the offender, nor provide appropriate protection for the community; accordingly, juvenile probation opined that a residential placement was the least restrictive disposition for Cassidy D.'s § 46b-120 (6) (C) violation. The court has fully credited and accepted this finding. However, the PDS further described one of the investigating juvenile probation officers' opinion as to the specific placement most appropriate in this case, as follows: "[T]his Probation Officer respectfully recommends that Cassidy . . . be committed to the Department of Children and Families as a delinquent, for direct placement at Stetson Residential Treatment Center for a period not [to] exceed 19 months."[3]

On January 29, 2010, Cassidy D. passed his nineteenth birthday. On January 26, 2010, the prosecuting authority filed the State's Memorandum in Support of Proposed Disposition.

---

[3] According to common knowledge within the juvenile justice community, Stetson is not "a residential facility within this state *and* under contract with" the Department of Children and Families, as contemplated by General Statutes § 46b-140 (j), which provides the dispositional alternatives applicable to the circumstances to this matter. (Emphasis added.) As described herein, the court has declined to adopt this aspect of the PDS, given its inconsistency with the limits of direct placements that are authorized by § 46b-140 (j).

On January 27, 2010, the court heard argument from the parties and the intervenor in support of, and in objection to, the proposed disposition of commitment. Both the respondent and the state, as the prosecuting authority in the underlying delinquency proceeding, proposed that Cassidy D. be committed to DCF as the disposition of his conviction for violation of a juvenile probation order. In part, they claimed this disposition to be appropriate because Cassidy D. has both indicated that he desires sex offender treatment and has stated his willingness to attend a residential rehabilitation program. As noted, DCF took the position that because Cassidy D. was over the age of eighteen at the time of disposition, the Juvenile Court lacks jurisdiction to order any commitment for him, whether by way of a direct placement at Stetson or through a general commitment to DCF.

After the hearing on January 27, 2010, this court orally overruled the department's objection to the proposed disposition of commitment, and ordered Cassidy D. committed to DCF pursuant to our legislative scheme for resolution of delinquency convictions, as further described below.

II

JURISDICTION AND APPLICABLE LEGISLATION

DCF claims that the court lacks jurisdiction to impose the disposition of commitment proposed by the prosecuting authority, Cassidy D.'s defense counsel, and his juvenile probation officer. In summary, DCF asserts the following arguments in support of its contention that, because of his age, this court lacks jurisdiction to order that Cassidy D. be committed to its care: (A) a particular statute and rule of practice, as well as controlling precedent, limits the authority of the court to commit someone who is eighteen or older to DCF; (B) various statutes that govern DCF indicate that the department

does not have the authority to provide services to persons who are eighteen and older, or to license other entities to do so; (C) historically, the courts and DCF have assumed that DCF's jurisdiction ends when a person reaches the age of eighteen; and (D) practically, the court should not commit Cassidy D. to DCF, as the department is not able to provide him with appropriate services. While DCF raises a number of specific arguments in support of its contention that the court lacks jurisdiction, the court disagrees and, instead, finds it has jurisdiction to impose the disposition of commitment.

In Juvenile Court proceedings, as in other civil matters "once the question of lack of jurisdiction of a court is raised, '[it] must be disposed of no matter in what form it is presented' . . . and the court must 'fully resolve it before proceeding further with the case.' " (Citations omitted.) *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988), cited in *In re Anthony A.*, 112 Conn. App. 643, 650, 963 A.2d 1057 (2009). Although DCF does not specify a particular reliance upon a claim that the court lacks subject matter jurisdiction, the court further notes the following applicable legal precepts: " '[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged.' . . . *Lowe* v. *Shelton*, 83 Conn. App. 750, 754, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004)." *In re Anthony A.*, supra, 653. As well, if DCF is asserting that the court lacks jurisdiction to impose a disposition of commitment because it is not vested with specific authority to do so, the following principles would apply: "[J]urisdiction over the person, jurisdiction over the subject-matter, and jurisdiction to render the particular judgment are three separate elements of the jurisdiction of a court." (Internal quotation marks omitted.) *Bridgeport* v. *Debek*, 210 Conn. 175, 179, 554 A.2d 728 (1989). "Although related, the court's authority to act pursuant

to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004). Under any analysis, DCF's claims as to jurisdictional defects must fail, because the court both maintains jurisdiction to issue the disposition of commitment and is specifically authorized to do so as a matter of law.

DCF's arguments must be considered in light of the precise legislative scheme which directly pertains to the issue of this court's jurisdiction to order that Cassidy D. be committed to DCF. The statutes at issue compel the court's strict adherence to the designated dispositional options; under the circumstances of this case, despite Cassidy D.'s age, the court is not free to vary from the legislature's specified outcomes. *State* v. *Curtis*, 22 Conn. App. 199, 576 A.2d 1299 (1990).

Section 46b-120 contains definitions for terms that are used in the juvenile matters chapter of the statutes and establishes the jurisdiction of this court insofar as delinquency proceedings are concerned. Thus, § 46b-120 provides in relevant part: "(1) . . . *for purposes of delinquency matters, 'child' means any person* (A) under sixteen years of age, or (B) *sixteen years of age or older who, prior to attaining sixteen years of age, has violated any* . . . *state law* . . . *and, subsequent to attaining sixteen years of age, violates* . . . *any condition of probation ordered by the Superior Court with respect to such delinquency proceeding* . . . (6) a child may be convicted as 'delinquent' who has violated (A) any . . . state law . . . or (C) conditions of probation as ordered by the court . . . (11) 'delinquent act' means the violation of any . . . state law . . . or

the violation of any order of the Superior Court . . . ." (Emphasis added.)

General Statutes (Rev. to 2005) § 46b-121 further defines the term "juvenile matters" as used in our state, and establishes the specific authority of the Superior Court. In pertinent part, § 46b-121 (a) provides as follows: "Juvenile matters in the criminal session include all proceedings concerning delinquent children in the state *and persons sixteen years of age and older who are under the supervision of a juvenile probation officer while on probation* . . . for purposes of enforcing any court orders entered as part of such probation or suspended commitment." (Emphasis added.) Section 46b-121 (b) further establishes, without reference to the age of the child at issue, the court's broad authority insofar as delinquent children are concerned: "In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to . . . guardians, custodians or other adult persons owing some legal duty to a child, youth or youth in crisis therein, as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child, youth or youth in crisis subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families. In addition, with respect to proceedings concerning delinquent children, the Superior Court shall have authority to make and enforce such orders as it deems necessary or appropriate to punish the child, deter the child from the commission of further delinquent acts [and] assure that the safety of any other person will not be endangered . . . ."

Some statutory provisions authorize the court to elect certain options for disposition of matters involving convictions for delinquent acts, while other legislation mandates the court to impose predesignated outcomes if certain conditions are met. The various subprovisions

of General Statutes (Rev. to 2005) § 46b-140 generally and specifically address the subject of disposition of a delinquent child. For instance, § 46b-140 (b), effective insofar as Cassidy D. is concerned, provides in relevant part: "Upon conviction of a child as delinquent, the court may: (1) Place the child in the care of any institution or agency which is permitted by law to care for children . . . [or] (5) place the child on probation . . . ."[4] The dispositional statutes specifically contemplate, however, that there are certain delinquents for whom placement in a child care institution or on probation will not be appropriate. Section 46b-140 (f) specifically directs the court to order commitment to DCF for such a child, as follows: *"If the court further finds that its probation services or other services available to the court are not adequate for such child, the court shall commit such child to the Department of Children and Families* in accordance with the provisions of section 46b-141. Prior to making such commitment, the court shall consult with the department to determine the placement which will be in the best interest of such child." (Emphasis added.)

The alternatives for a § 46b-140 (f) delinquency commitment are specifically identified by § 46b-140 (j) as follows: "Except as otherwise provided in this section, the court may order a child be (1) committed to the Department of Children and Families and be placed directly in a residential facility within this state and under contract with said department, *or* (2) committed to the Commissioner of Children and Families for placement by the commissioner, in said commissioner's discretion . . . ." (Emphasis added.) General Statutes

<hr>

[4] General Statutes (Rev. to 2005) § 46b-140 (b) was amended by § 79 of Public Acts, Spec. Sess., June, 2007, No. 07-04, which became effective on and after January 1, 2010, and therefore is not applicable to Cassidy D.'s case. The aforementioned provisions are now codified as § 46b-140 (b) (1) (A) and (E).

§ 46b-141 designates the maximum length of a delinquency commitment as follows: "(a) Except [for minimum period of residential placement for SJO's], commitment of children convicted as delinquent by the Superior Court to the Department of Children and Families shall be for (1) *an indeterminate time up to a maximum of eighteen months,* or (2) when so convicted for a serious juvenile offense, up to a maximum of four years, at the discretion of the court, unless extended as hereinafter provided. (b) The Commissioner of Children and Families may file a motion for an extension of the commitment as provided in subdivision (1) of subsection (a) beyond the eighteen-month period on the grounds that such extension is for the best interest of the child or the community. . . ." (Emphasis added.) Concomitantly, General Statutes § 17a-8 governs the custody of children and youths committed as delinquent to DCF without establishing an upward age limit for custodial care, providing in relevant part: "(a) All children and youths who are or have been committed to the custody of the Commissioner of Children and Families as delinquent shall remain in such custody until such custody expires or terminates as provided by order of the Superior Court. . . ."[5]

## III

## DCF'S OBJECTIONS TO DISPOSITION OF COMMITMENT

### A

DCF first claims that a particular statute, rule of practice and case law limits the court's jurisdiction and authority to commit a person who is eighteen or older to its custody, notwithstanding an underlying delinquency

---

[5] General Statutes § 17a-1, which provides definitions for the terms that are used in §§ 17a-1 to 17a-26, 17a-28 to 17a-49, 17a-127 and 46b-120, states, in subsection (7) that the term " '[d]elinquent child' shall have the meaning ascribed thereto in section 46b-120 . . . ."

conviction. In support of this contention, DCF relies upon § 46b-140 (b), Practice Book § 26-1 (b) and a summary statement found in *State* v. *Skakel*, 276 Conn. 633, 662, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). The court finds that this aspect of DCF's argument provides an insufficient basis for avoiding Cassidy D.'s disposition of commitment, a disposition that is consistent with the PDS and our delinquency statutes as a whole.

In support of this first argument, DCF observes that § 46b-140 (b) states that "[u]pon conviction of a child as delinquent, the court may: (1) Place the child in the care of any institution or agency which is permitted by law to care for children . . . ." According to DCF, this language in and of itself supports "[t]he clear implication . . . that placement orders are restricted to those defendants who have not yet reached that age of majority." Such a construction of § 46b-140 is, however, inconsistent with the juvenile delinquency legislation as a whole. Specifically, this argument is contrary to the legislature's decision to give the court authority over delinquent children who violate their probation after they reach the age of sixteen without setting out an upper age limit, a decision which is evident in § 46b-120 and § 46b-121, as further discussed below.

In addressing this aspect of DCF's objection to the proposed disposition of commitment, it is significant to note that Cassidy D.'s conduct in violating his juvenile probation constituted a "delinquent act" as defined by § 46b-120 (11) of the then effective statute. Both the concept of the "delinquent act" and the offense of violation of juvenile probation are creatures of our legislative scheme for management of juveniles whose criminal conduct is presented to the Juvenile Court as matters in the criminal session. As noted in part III, the edition of § 46b-121 (a) that is relevant to Cassidy D.'s case states in pertinent part, without identification of an

upward age limit, as follows: "Juvenile matters in the criminal session include all proceedings concerning delinquent children in the state *and* persons *sixteen years of age and older* who are under the supervision of a juvenile probation officer while on probation . . . ." (Emphasis added.) Furthermore, insofar as the term "children" used in § 46b-121 (a) is concerned, it is significant to note that the relevant edition of § 46b-120 (1) defines the term "child" as follows, again without setting an upper age limit: "for purposes of delinquency matters, 'child' means any person . . . (B) *sixteen years of age or older* who, prior to attaining sixteen years of age, has violated any . . . state law . . . and, subsequent to attaining sixteen years of age, violates . . . any condition of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ." (Emphasis added.)

Thus, through § 46b-120 (1) (B), the legislature has clearly contemplated the court's imposition of any order applicable to a "child" by way of disposition in a delinquency matter, even if the "child" at issue is over the age of eighteen. The determination that the definition of "child" set out in § 46b-120 provides the court with jurisdiction to impose a delinquency commitment for Cassidy D. is fully consistent with our Supreme Court's conclusion that the extension of the delinquency commitment of the respondent in *In re William D.*, 284 Conn. 305, 312, 933 A.2d 1147 (2007), was appropriate even though the extension was sought after he had reached age sixteen. As the court stated: "Although we agree that the definition of 'child' under § 46b-120 (1) could be applied literally to § 46b-141 (b) to support the respondent's construction, *we eschew such a mechanistic application of the definition given the internal inconsistencies and consequences that would ensue in clear contravention of the broader purposes of the delinquency scheme.*" (Emphasis added.) Id. Thus, the

trial court in *In re William D.* maintained jurisdiction to extend the delinquency commitment at issue, despite the legislature's "inclusion of a specific class of persons over the age of sixteen in the definition of 'child' in § 46b-120 (1) (B). . . . [T]his definition was intended to address a different jurisdictional concern: keeping within the juvenile justice system those delinquent children who currently are not under an order of commitment and who have reoffended. See Public Acts 1998, No. 98-256, §§ 1 and 10 (respectively, adding definition for delinquent child for persons sixteen years of age or older, and confirming jurisdiction of Superior Court to 'persons sixteen years of age and older who are under the supervision of a juvenile probation officer while on probation or a suspended commitment to the Department of Children and Families, for purposes of enforcing any court orders entered as part of such probation or suspended commitment')." *In re William D.*, supra, 318–19.

In the context of its first claim, DCF also contends that the court is restricted from entering orders of commitment on eighteen year olds through the operation of Practice Book § 26-1 (b). DCF argues that this section defines the term commitment as "an order of the judicial authority whereby custody and/or guardianship of a child or youth are transferred to the commissioner of the department of children and families," without referring to commitments of persons who are eighteen or older. However, DCF's observation about this rule does not support its contention that the court lacks jurisdiction for commitment of persons who, such as Cassidy D., are over the age of eighteen when convicted for violation of juvenile probation. Practice Book § 26-1 (a), the immediately preceding subsection of Practice Book § 26-1, mirrors the broad definition of the term "child," without upward age limit, that is used in the applicable version of § 46b-120 (1) (B). Thus, Practice

Book (2005) § 26-1 (a) (1) defines the term "child," "for purposes of delinquency," as including not only "any person (A) under sixteen years of age whose delinquent act . . . occurred prior to the person's sixteenth birthday," but also any person "(B) sixteen years of age or older who, prior to attaining sixteen years of age, has violated any . . . state law . . . and, subsequent to attaining sixteen years of age, violates . . . any condition of probation ordered by a judicial authority with respect to such delinquency proceeding . . . ."

Finding DCF's arguments to lack weight, the court instead is persuaded that, through § 46b-140, the legislature has clearly and unequivocally designated the limited options available for disposition in this case. Here, where there are no adequate probation services or other services available insofar as Cassidy D. is concerned, the court's dispositional alternatives are specifically constrained by the unequivocal text of § 46b-140 (f). In Cassidy D.'s case, § 46b-140 (f) does not merely direct but mandates the court to commit him, as a delinquent, to DCF. To impose any disposition for Cassidy D. other than that authorized by a strict construction of § 46b-140 (f) would require the court to disregard the precise language of the statute at issue. This the court declines to do. See *State* v. *Curtis*, supra, 22 Conn. App. 199 (trial court abused discretion by using mechanism for supervision of person found incompetent to stand trial other than that permitted by clear language of General Statutes § 54-56d [m]).

Moreover, DCF's arguments concerning § 46b-140 (b) and Practice Book § 26-1 are contrary to the implications of § 46b-141. Section 46b-141 establishes the procedure by which DCF is expected to provide services, permanency plans and court reports during the course of a disposition of commitment upon a delinquency conviction. As discussed in part III, the clear text of § 46b-141 provides for indeterminate commitments for

up to eighteen months, or up to four years in the case of a commitment based upon conviction for a serious juvenile offense, and further provides for eighteen month extensions of commitment for any delinquency commitment. However, the statute, in its applicable version, does not mention a delinquent's age as a restriction upon either the department's obligations, or upon the delinquent's eligibility for the department's services while committed.[6]

Broadly, DCF claims that the court's jurisdiction to commit Cassidy D. is governed by the Supreme Court's opinion in *State* v. *Skakel*, supra, 276 Conn. 633, citing to the following summary comment: "As the trial court properly determined, however, under state law, no person over the age of eighteen may be committed to the care and custody of the department." Id., 662. See DCF's Response to Prosecutor's Memorandum of Law Concerning Disposition and to Questions Raised by the Court, dated February 1, 2010.[7] Upon consideration, the court finds DCF's reliance upon this single line of text to be of little weight in the context of Cassidy D.'s circumstances; the facts of *Skakel* render the result, the

---

[6] The notes to § 46b-141 indicate that, historically, this provision contemplated an end date to DCF's supervision over those committed to its care by way of delinquency commitments; that end date is no longer present in the statute. The notes state that in 1969, through Public Acts 1969, No. 664, § 10, the legislature enacted language which replaced previous provisions that had terminated the commitment period "when the child reaches the age of twenty-one except in the case of mental deficients or defective delinquents." (Internal quotation marks omitted.) Conn. Gen. Stat. Ann. § 46b-141 (West 2009), historical and statutory notes.

[7] In rebuttal to DCF's February 1, 2010 brief, the prosecuting authority filed its Addendum to State's Memorandum in Support of Proposed Disposition on like date. This Addendum referenced, and included as an exhibit, an opinion letter written by Attorney General Richard Blumenthal on December 14, 2008. At the time, notwithstanding the *Skakel* text upon which DCF relies in the present matter, the Attorney General opined that "there is *no clear legal authority* to answer the question as to whether DCF has authority to provide services to individuals over the age of 18 who are committed as delinquents." (Emphasis added.) Id.

reasoning, and this comment fundamentally inapposite to the present case. As the prosecuting authority has ably noted, unlike the present matter, *Skakel* did not involve an individual who had been subject to prosecution as a juvenile, and who was convicted as a delinquent based upon that juvenile prosecution; the defendant in *Skakel* was never the subject of any prosecution while he was a juvenile, and no charges were brought against him until he had reached middle age, although those charges were based upon conduct alleged to have occurred while he was fifteen years old. Moreover, while the *Skakel* court did comment that "under state law, no person over the age of eighteen may be committed to the care and custody of the department"; id.; there is no factual basis in the *Skakel* opinion for construing this comment as broadly as DCF proposes.

Rather, the *Skakel* comment cited by DCF was directed at the implications for a commitment of the defendant in that case, a person who had never previously been presented to the Juvenile Court while a minor; the *Skakel* remark flows from a discussion of § 17a-145-48 (e) of the Regulations of Connecticut State Agencies, a provision that is inapposite to Cassidy D.'s case. Generally, §§ 17a-145-48 to 17a-145-58 of the Regulations of Connecticut State Agencies apply to DCF licensing of child care agencies and facilities, while §§ 17a-145-59 to 17a-145-99 apply to DCF's licensing of children's homes and other residential treatment facilities. It is not apparent that the specific regulation at issue in *Skakel*, or any of the corollary regulations would foreclose the department from providing a residential placement for a delinquent child over the age of eighteen who, as defined in § 46b-120 (1) (B), violated a state law when he was under sixteen years of age and then violated an order of probation related thereto after he turned sixteen. The regulations do not explicitly prohibit the department from placing such children.

Indeed, if the regulations did so, such a result would be contrary to the explicit intent of the legislature to extend the authority of the Juvenile Court over such children, as expressly stated in § 46b-120 (1) (B). It is well accepted that "[w]hen a statute and regulation conflict, the statute must prevail." *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 168, 699 A.2d 142 (1997). Further, the specific regulation at issue in *Skakel* should not be construed to limit the department from providing services for delinquent children in the § 46b-120 (1) (B) category by implication, as it is also well accepted that "[t]he legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *In re William D.*, supra, 284 Conn. 319.

For purposes of the present Juvenile Court proceeding, in which Cassidy D. stands convicted as a delinquent with the underlying charge of violating an order of juvenile probation, this comment from *Skakel* should properly be read in the light of the Supreme Court's opinion in *In re William D.*, supra, 284 Conn. 312. That opinion, published a year subsequent to *Skakel*, dealt with DCF's request to extend the eighteen month commitment that had been imposed on the respondent, William D., when he was convicted as a delinquent at age fifteen. Id., 308–309. The trial court had extended that commitment, but ordered that it would terminate on William D.'s eighteenth birthday. Id., 309. William D. appealed from the order extending his commitment, claiming that the court lacked jurisdiction because DCF had brought its extension request before the court when he was sixteen years old, and thus beyond the juvenile jurisdiction then established by § 46b-120 (1). Id., 310. The Supreme Court resolved that jurisdictional issue in favor of extending the commitment, notwithstanding William D.'s age. Thus, the Supreme Court held that

the commitment extension provisions of § 46b-141 (b) logically refer to the status of the respondent at the time of his initial commitment, noting that this "is the only construction that is consistent with the language and rehabilitative purpose of the delinquency scheme as a whole. The petitioner contends that various inequities and inconsistencies would ensue if this court were to construe § 46b-141 (b) to limit the court's jurisdiction to persons who are children, as defined under § 46b-120, at the time of the pertinent proceeding subsequent to commitment." Id., 311. This court finds that similarly eschewed "inequities and inconsistencies" would ensue if it were to avoid the commitment to DCF for Cassidy D. that is required by § 46b-140 (f) under the circumstances of this case.

### B

DCF next claims that the court is deprived of jurisdiction to commit Cassidy D. as a delinquent because certain statutes pertaining to DCF's authority indicate that it is precluded from providing services to persons eighteen years old and older. Again, the court finds that this argument fails to avoid the disposition of commitment for Cassidy D.

In support of this aspect of its jurisdictional claims, DCF makes much of the fact that in §§ 46b-140, 46b-141 and various provisions of the statutory scheme regarding the department's authority to respond to the needs of delinquents, and the communities in which they reside, the legislature has purportedly used the term "child" in a manner which indicates its intent to exclude any person over the age of eighteen from a delinquency commitment.[8] However, DCF's proposed

---

[8] For the purposes of its argument that it is not authorized to provide services for persons who are eighteen and older, DCF also relies on General Statutes §§ 17a-3, 17a-7 and 17a-8, which pertain to the agency's duty to provide services for "children and youth," and General Statutes §§ 17a-93 and 17a-114, which apparently pertain to DCF's authority to place children in its custody into foster care.

analysis fails to support its desired result of eliminating jurisdiction of this court to order the delinquency commitment for Cassidy D. As previously discussed, § 46b-120 (1) clearly establishes the jurisdiction of the court, as used in the context of §§ 46b-140 and 46b-141, over the child at issue in the present case, involving an underlying delinquency conviction, probation orders, and a subsequent, timely prosecution for violation of juvenile probation after the delinquent's eighteenth birthday.

As noted, § 46b-120 (1) provides, in pertinent part, that *"for purposes of delinquency matters, 'child' means any person* (A) under sixteen years of age, or (B) *sixteen years of age or older who, prior to attaining sixteen years of age, has violated* any . . . state law . . . *and, subsequent to attaining sixteen years of age, violates* any order of the Superior Court or *any condition of probation ordered by the Superior Court with respect to such delinquency proceeding* . . . ." (Emphasis added.) If the court were to accept DCF's construction of the statutes impacting its own authority, it would be forced to ignore the obvious statutory protocol applicable to dispositions for individuals who were convicted as delinquent and placed on juvenile probation, and, after reaching the age of eighteen, violated

As to the former statutes, it is noted that § 17a-3 also specifically adds that DCF has a duty to provide services to "children and youths who are . . . delinquent . . . including all children and youths who are or may be committed to it by any court . . . ." In turn, General Statutes § 17a-1, which provides definitions for the terms that are used in these statutes, states, in subparagraph (7), that the term " '[d]elinquent child' shall have the meaning ascribed thereto in section 46b-120 . . . ." That statute, as previously detailed, provides that "for purposes of delinquency matters, 'child' means *any person* . . . *(B) "sixteen years of age or older* who, prior to attaining sixteen years of age, has violated any . . . state law . . . and, subsequent to attaining sixteen years of age, violates . . . any condition of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ." (Emphasis added.) General Statutes (Rev. to 2005) § 46b-120 (1).

As to the latter statutes, DCF has provided insufficient basis for concluding that they would apply to this delinquency proceeding.

that juvenile probation while it was still in effect. Simply put, if the court adopted DCF's claims concerning the limits of that department's provision of services for individuals such as Cassidy D., the implications of the court's jurisdiction over delinquents while on probation, as expressly contemplated without age limit by §§ 46b-120 (a) and 46b-121 (a), would be defeated. Similarly, if the court adopted DCF's proposed limitations upon commitments for delinquents of a certain age, the clear and unequivocal language of § 46b-140 (f) and § 46b-141, the court would be constrained from implementing its mandate to order a respondent committed to DCF in the face of his admitted violation of juvenile probation.

The court finds that the statutes that must be adhered to, notwithstanding DCF's objection to the proposed disposition, do not preclude, but instead support, and, moreover, actually mandate the order of delinquency commitment in this case. As the department has failed to establish a direct legal impediment to the court exercising its jurisdiction by fulfilling this statutory mandate, its arguments concerning lack of authority to provide services to Cassidy D. upon commitment must fail.

C

DCF also contends that the court is deprived of jurisdiction to commit Cassidy D. as a delinquent because, historically, both the courts and the department have assumed that DCF's jurisdiction ends when a person reaches the age of eighteen. Upon review, the court finds that DCF has provided insufficient support for this proposition; the cases cited in DCF's Objection are neither persuasive analytically nor binding insofar as jurisdictional issues are concerned. The question of the department's authority to provide services to such persons is separate from the issue of the court's authority

and obligation to comply with the edict of § 46b-140 (f) by imposing a disposition of delinquency commitment for Cassidy D.

## D

Finally, DCF claims that the court lacks jurisdiction to commit Cassidy D. by way of a delinquency disposition because, as a practical matter, the department is functionally unable to provide him with appropriate services. Viewed from another perspective, the intervenor has effectively claimed that the court is not empowered to commit Cassidy D. on the delinquency side because DCF has failed to provide facilities suitable for the care and rehabilitation of delinquents who are committed after they reach age eighteen. The department's circular logic is unpersuasive insofar as the court's jurisdiction to commit is concerned, so that the court again declines to adopt this argument in opposition to the disposition of commitment for Cassidy D.

Although claiming that it lacks services sufficient to meet this delinquent's needs, DCF ostensibly concludes that, in lieu of commitment, an additional period of juvenile probation is sufficient for Cassidy D. Despite the fact that he violated the sex offender conditions of his probation mere months after its imposition, DCF proposes that the court's powers of contempt are sufficient to enforce probations orders imposed upon a delinquent who is over the age of eighteen. In the absence of apposite authority, the court declines to adopt the department's promoted extension of the court's authority to exercise the extraordinary remedy of contempt in enforcement of probation orders, in general or, for specifically, juveniles. Moreover, under the circumstances of the present case, in which Cassidy D. violated his juvenile probation mere months after its imposition in August, 2009, there is inadequate reason for the court to conclude that the contempt option

would either assist the delinquent in achieving rehabilitation, or protect the public from the risk that would be present if the delinquent were permitted to reside in the community. Accordingly, the court joins with the probation officers, with the state as the prosecuting authority, and with Cassidy D., himself, in concluding that there are no probation services or other services available to the court which are adequate for this delinquent, as contemplated by § 46b-140 (f).

As noted throughout, the court's obligation is to adhere to the statutory mandate of § 46b-140 (f), which directs the disposition of commitment in the face of the inadequacy of both probation and the other services that are available to the court. The text of § 46b-140 (f) must be read in conjunction with § 46b-140 (j) (1) and (2), which expressly authorize the court to order commitment with placement in a Connecticut residential facility or, in the alternative, to order commitment for placement in DCF's discretion. Neither § 46b-140 (j) (1) and (2) specifically limits the court to electing a dispositional option that DCF recommends, approves or can sustain as a practical matter. However, as discussed in part III, § 46b-140 (f) does require that "[p]rior to [ordering a delinquency] commitment, the court shall consult with the department to determine the placement which will be in the best interest of the child." Section 46b-140 (f) does not mandate that the consultation shall constrain the court from electing either dispositional alternative by way of commitment, and focuses specifically upon the delinquent's "best interest" by way of commitment, not upon the department's ability to serve that identified best interest.

Moreover, insofar as practicalities are concerned, if DCF is unable or unwilling to meet the best interest of a child who is subject to a delinquency commitment due to practical issue, the legislative scheme has provided some succor. For example, if the department is unable

or unwilling to place Cassidy D. in a residential sex offender treatment setting that has been designated, by the juvenile probation officers, as the least restrictive and more appropriate placement for this delinquent, the department has ready access to the remedy provided by General Statutes § 17a-12, colloquially referenced as "the transfer statute." This legislation clearly anticipates that DCF will be unable to meet the needs of some committed delinquents, as it allows the department to transfer such a child to the care and custody of another state agency if it is determined that a committed child is dangerous to himself or to others, and "[w]hen the commissioner, or the commissioner's designee, determines that a change of program is in the best interest of any child or youth committed . . . to the department . . . ." General Statutes § 17a-12 (a). The pertinent language of that statute provides the department with unfettered and expedited access to the court if, for instance, the department determines after commitment that Cassidy D. should be transferred to a facility maintained and supervised by the Department of Correction, not by the Department of Children and Families. The pertinent portion of that statute, applicable to Cassidy D.'s case, provides: "When, in the opinion of the commissioner, or the commissioner's designee, a person fourteen years of age or older is dangerous to himself or herself or others or cannot be safely held at the Connecticut Juvenile Training School, if a male, or at any other facility within the state available to the Commissioner of Children and Families, the commissioner, or the commissioner's designee, *may request an immediate hearing* before the Superior Court on the docket for juvenile matters where such person was originally committed to determine whether such person shall be transferred to the John R. Manson Youth Institution, Cheshire, if a male . . . . *The court shall, within three days of the hearing, make such determination . . . .*"

(Emphasis added.) General Statutes § 17a-12 (a). Given this option, and given Cassidy D.'s history as a sex offender, albeit one who is, due to his age, not maintained upon the state's sex offender registry, the department cannot prevail on its claim, that lack of access to appropriate custodial facilities for Cassidy D. renders this court without jurisdiction to commit him as a delinquent.

## IV

## DISPOSITION

Among other things, Cassidy D.'s thorough and comprehensive PDS reflects that, on behalf of the court, the Court Support Services Division, through its probation officers, engaged in multiple communications with diverse representatives of the Department of Children and Families. Such communications were consistent with the court's obligation to "consult" with DCF prior to imposing a disposition of delinquency commitment, as contemplated by § 46b-140 (f), "to determine the placement which will be in the best interest" of Cassidy D., a child within the meaning of § 46b-120 (1) (B).

As previously discussed, consistent with the PDS, the court has concluded that probation services or other services available to the court, including community based services, are not adequate to meet Cassidy D.'s rehabilitative needs. Moreover such services could not provide the public with adequate protection from Cassidy D., given the nature of his sexually based delinquent conduct and the nature of the violation of his juvenile probation.

In reaching its determination on the dispositional issues, as required by § 46b-140 (a), the court considered (1) the seriousness of Cassidy D.'s violation of juvenile probation, including his failure to adhere to the conditions of the outpatient sex offender treatment

offered to him; (2) Cassidy D.'s record of delinquency, including the nature of the Risk of Injury offense that gave rise to his original delinquency conviction; (3) Cassidy D.'s willingness to participate in a residential rehabilitative program, particularly in residential sex offender treatment such as that offered by Stetson, which has been identified and promoted by the juvenile probation officers as being the best and least restrictive placement for him; (4) the absence of any mitigating factors; and (5) Cassidy D.'s culpability in committing the offense of violating his juvenile probation, which included but was not limited to intentionally deciding not to engage in appropriate efforts to obtain housing that fell within the limits prescribed by both his probation and his sex offender treatment, but, rather, to reside in the convenient but highly violative housing circumstances, in the presence of younger children, that formed the basis for the § 46b-120 (6) (C) violation, which was the subject of his prosecution.

These criteria having been addressed, § 46b-140 (f) directs the court to take specific action insofar as Cassidy D.'s disposition is concerned. The clear and unequivocal text of the statute bears repeating, given the controversy surrounding the proposed disposition in this case, as it provides: "If the court further finds that its probation services or other services available to the court are not adequate for such child, the court shall commit such child to the Department of Children and Families . . . ." General Statutes § 46b-140 (f). The court has applied the specific edict within § 46b-140 (f) to the facts of this case, as it is required to select only the options made available for disposition by this pertinent legislation. This application is within the constraint upon selection of statutory options provided to judges of the Superior Court through *State* v. *Curtis*, supra, 22 Conn. App. 199. As previously discussed, then, notwithstanding his chronological age, Cassidy D. presents

to the court as a delinquent, as a statutory child who has violated his juvenile probation, within the clear language of § 46b-120 (1) (B), in this juvenile matter in the criminal session established by § 46b-121 (a) without identification of an upward age limit.

On the other hand, notwithstanding the appropriateness of the treatment that could be provided to Cassidy D. by an order of commitment with direct placement at Stetson, the court is not authorized to adopt this specific recommendation, as proposed by the skilled and experienced probation officers who authored the previously referenced predispositional study. As previously discussed, there is no dispute that Stetson *does* offer a residential sex offender treatment program that would meet the needs of both Cassidy D. and the community. Nevertheless, Stetson is *not* "a residential facility within this state *and* under contract with" the Department of Children and Families, as contemplated by § 46b-140 (j) (1). Therefore, the court may not commit Cassidy D. to the Department of Children and Families for direct placement at that facility and, the court is constrained from issuing the order of commitment exactly as the juvenile probation officers had proposed.

Accordingly, the court concluded that the only appropriate disposition for Cassidy D. was a delinquency commitment to DCF, as called for by § 46b-140 (j) (2). Such an order, in compliance with this statutory subsection, allows the Commissioner of Children and Families to, in her discretion, place Cassidy D. at the Connecticut Juvenile Training School, in a treatment facility within or outside this state, or on parole, or to take such other action as is authorized by law. The court finds that there is no less restrictive alternative available for Cassidy D. by way of disposition, and that reasonable efforts to prevent or eliminate the need for commitment of this delinquent have been made by the state. Pursuant to § 46b-140 (f) and § 46b-140 (j) (2), and § 46b-141, the

commitment shall be for an indeterminate period not to exceed eighteen months, as contemplated by § 46b-141 (a).

WHEREFORE, the Objection to the Proposed Disposition presented by the intervenor, Department of Children and Families, has been OVERRULED, and

WHEREFORE, the court having convicted Cassidy D. as delinquent for violating § 46b-120 (6) (C), he was ordered committed to the Commissioner of the Department of Children and Families for an indeterminate period not to exceed eighteen months, effective February 4, 2010, to expire no later than August 6, 2011, absent further order of the court.